JOHN A. SCHULTE

*v.*

MEREDITH WARREN *et al.*

*Opinion filed October 24, 1905—Rehearing denied Dec. 7, 1905.*

1. WATERS—*effect of grant of land bordering on lake.* A grant of land bounding upon a natural lake or body of water meandered by the government extends to the water's edge in its natural condition, while the ownership of the bed of the lake is in the State in trust for the people for the purpose of fishing, boating and the like.

2. SAME—*effect of gradual accretions or encroachments.* The owner of land bordering on a meandered lake acquires title to the land formed by gradual accretions and loses title to that submerged by gradual encroachments of the water.

3. SAME—*owner does not lose title by sudden flooding of land.* Where there is a sudden and marked change in the shore line and the lands of the adjoining owner are flooded, such as by the building of a dam or the changing of the course of a stream, the adjoining owner does not lose his title to the lands so submerged.

4. SAME—*in Illinois the common law rule is not the test of whether waters are navigable.* In Illinois the common law rule that

waters were navigable only where the tide ebbed and flowed is not the test whether waters are navigable, and waters which are navigable in fact are navigable in law; but the common law rule governs so far as it relates to questions of boundary and ownership.

5. SAME—*in Illinois the public have an easement of navigation in waters navigable in fact.* In Illinois the public have an easement of navigation in waters which are navigable in fact, regardless of the ownership of the underlying soil; and the question whether waters are navigable depends upon whether they are of sufficient depth to afford a channel for useful commerce of practical utility to the public.

6. SAME—*what are and what are not "navigable waters."* The fact that a body of water is deep enough in places for hunters and fishermen to pass over it in small boats does not render such body navigable within the meaning of the law, but the public may have a right of navigation in places where the water is deep enough, even though the body of water is not navigable in all its parts.

7. SAME—*right to hunt and fish is not incident to the right of navigation.* The right of navigation does not carry with it, as incident thereto, the right to hunt and fish in the waters where the easement of navigation exists.

8. GAME—*land owner has exclusive right to hunt and fish on his own property.* While there is no absolute ownership of fish and game in their natural state while at liberty, yet they become the property of the owner of the soil when taken thereon, and the exclusive right to take them within the limits of his land is in him.

9. SAME—*rights of owner of soil covered by navigable waters.* The owner of the soil has the absolute right to use and enjoy the same, even when covered by navigable waters, so long as he does not interfere with the public easement of navigation, pollute the stream or diminish the supply; but the right of the public is limited to the easement of navigation.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Mason county; the Hon. THOMAS N. MEHAN, Judge, presiding.

LYMAN LACEY, Jr., BEACH, HODNETT & TRAPP, and LAWRENCE Y. SHERMAN, for appellant:

The title of shore owners on meandered lakes extends to the ordinary low-water mark, whether such lands are navigable or non-navigable. Gould on Waters, secs. 198, 199,

203; 4 Am. & Eng. Ency. of Law, (2d ed.) 832; *Fletcher v. Phelps*, 28 Vt. 257; *McBurney v. Young*, 67 id. 574; *Waterman v. Johnson*, 13 Pick. 261; *West Roxbury v. Stoddard*, 7 Allen, 167; *Paine v. Woods*, 108 Mass. 160; *Cordage Co. v. Water Power Co.* 16 N. E. Rep. 782; *Stover v. Jackson*, 60 Pa. St. 339; *Wheeler v. Spinola*, 54 N. Y. 377; *Johnson v. Brown*, 33 Wash. 588.

On meandered lakes in this State, if the waters, by gradual and imperceptible progress, encroach upon the surrounding lands the land thereby covered belongs to the State; but where the inundation is sudden the title to the land covered with such water remains in the riparian proprietor, whether the change is produced by natural or artificial means, so long as the riparian owner is not responsible for the change. Angell on Water-courses, (7th ed.) secs. 57-60; Gould on Waters, secs. 155, 158, 159, 198, 203; 1 Am. & Eng. Ency. of Law, (2d ed.) 467, 469, 473; *Halsey v. McCormick*, 18 N. Y. 147; *Wheeler v. Spinola*, 54 id. 377; *Mulry v. Norton*, 3 N. E. Rep. 581.

The common law test as to the ownership of lands which are covered by streams and other bodies of water is in force in this State. *Middleton v. Pritchard*, 3 Scam. 510; *Canal Trustees v. Haven*, 5 Gilm. 548; 11 Ill. 554; *Beckman v. Kreamer*, 43 id. 447; *Ensminger v. People*, 47 id. 384; *Chicago v. Laflin*, 49 id. 172; *Chicago v. McGinn*, 51 id. 266; *Lovingston v. St. Clair County*, 64 id. 56; *Railroad Co. v. Stein*, 75 id. 41; *Houck v. Yates*, 82 id. 179; *Cobb v. Lavalle*, 89 id. 331; *Ice Co. v. Shortall*, 101 id. 46; *Brooklyn v. Smith*, 104 id. 429; *Piper v. Connelly*, 108 id. 646.

The public have no rights in waters overlying the lands of an individual, where they are not in fact navigable. *Hubbard v. Bell*, 54 Ill. 110; *Fuller v. Shedd*, 161 id. 462.

Where the waters overlying lands, the title to which is in an individual, are in fact navigable, the public have only the right of navigation. The individual's title is subject only to the burden of the right of navigation by the public. All

other rights in such waters are in the owner of the soil. *Ex parte Jennings,* 6 Cow. 537; *Smith* v. *Rochester,* 92 N. Y. 463; *Sterling* v. *Jackson,* 69 Mich. 488; *Hall* v. *Alford,* 114 Mich. 165; *Hardin* v. *Jordan,* 140 U. S. 371; *Ensminger* v. *People,* 47 Ill. 384; *Chicago* v. *McGinn,* 51 id. 266; *Railroad Co.* v. *Stein,* 75 id. 41; *Ice Co.* v. *Shortall,* 101 id. 46; *Ballance* v. *Peoria,* 180 id. 29; *Adams* v. *Pease,* 2 Conn. 481; *Realty Co.* v. *Johnson,* 100 N. W. Rep. 94.

The right to hunt and fish in streams and other bodies of water in this State does not depend on whether such waters are navigable in the common law sense of the term or not. All of the cases, both ancient and modern, are harmonious on the subject, and hold that the right rests solely and exclusively in the owner of the soil. The common law test of navigability,—the ebb and flow of the tide,—is made use of for the sole purpose of solving the question of who owns the soil underlying the waters in which these rights are claimed. If the soil is owned by the State, all the people of the State have in such waters the right to hunt and fish and all other rights incident to ownership of the soil. If it is owned by an individual, he has in such waters the sole and exclusive right to hunt and fish and all other rights growing out of his ownership, subject only to the right of the public to navigate, if the waters are in fact navigable. The test of common law navigability is applied only to determine the ownership of the soil. *Lincoln* v. *Davis,* 53 Mich. 388; *Sterling* v. *Jackson,* 69 id. 488; *Hall* v. *Alford,* 114 id. 165; *Jones* v. *Johnson,* 6 Tex. Civ. App. 262; *Albright* v. *Cartwright,* 45 Atl. Rep. 634; *State* v. *Shannon,* 36 Ohio St. 423; *Ne-pee-nauk Club* v. *Wilson,* 96 Wis. 29; *Hardin* v. *Jordan,* 140 U. S. 371; *Middleton* v. *Pritchard,* 3 Scam. 510; *Canal Trustees* v. *Haven,* 5 Gilm. 548; 11 Ill. 554; Phear on Rights of Water, 44, note; *Beckman* v. *Kreamer,* 43 Ill. 447; *Ensminger* v. *People,* 47 id. 384; *Chicago* v. *Laflin,* 49 id. 172; *Chicago* v. *McGinn,* 51 id. 266; *Loving-*

*ston* v. *St. Clair County,* 64 id. 56; *Braxon* v. *Bressler,* 64 id. 488; *Railroad Co.* v. *Stein,* 75 id. 41; *Houck* v. *Yates,* 82 id. 179.

The doctrine that the right to fish and hunt is sole and exclusive in the owner of the soil has become a property rule in this State. *Ensminger* v. *People,* 47 Ill. 384; *Braxon* v. *Bressler,* 64 id. 488; *Houck* v. *Yates,* 82 id. 179.

WILLIAM A. POTTS, and JESSE BLACK, Jr., for appellees:

Meander lines are run in surveying fractional portions of public lands bordering upon navigable waters, not as boundaries of the tracts, but for the purpose of defining the sinuosity of the banks of the stream and as a means of ascertaining the quantity of land in the fraction. *Roberts* v. *Rust,* 104 Wis. 619; *Middleton* v. *Pritchard,* 3 Scam. 510; *Houck* v. *Yates,* 82 Ill. 179; *Fuller* v. *Dauphin,* 124 id. 542; *Railroad Co.* v. *Illinois,* 146 U. S. 387; *Sizor* v. *Logansport,* 151 Ind. 626; *Fuller* v. *Shedd,* 161 Ill. 462; *Bridge Co.* v. *People,* 197 id. 199; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Kraut* v. *Crawford,* 18 Iowa, 549.

The riparian proprietor on meandered lakes, whether navigable or non-navigable, takes to the water's edge. *State* v. *Gilmanton,* 9 N. H. 463; *Concord Co.* v. *Robertson,* 66 id. 4; *Bradley* v. *Rice,* 13 Me. 200; *Fletcher* v. *Phelps,* 28 Vt. 257; *Delaplaine* v. *Railway Co.* 42 Wis. 225; *Ne-peenauk Club* v. *Wilson,* 96 id. 295; *Willow River Club* v. *Wade,* 100 id. 97; *Mendota Club* v. *Anderson,* 101 id. 492; Angell on Water-courses, sec. 41; *Seaman* v. *Smith,* 24 Ill. 521; *Trustees* v. *Schroll,* 120 id. 519; *Fuller* v. *Shedd,* 161 id. 493; *Hammond* v. *Shepard,* 186 id. 241.

The title of a riparian owner on a meandered lake is suspended or lost, so far as excluding the public therefrom is concerned in rights of navigation, hunting and fishery, if the lands are permanently submerged, but is regained if the water recedes. It is also lost or suspended if the submerg-

ence is caused by artificial means and is permanent, so far as excluding the public therefrom is concerned in the rights of navigation, hunting and fishery. Blackstone's Com. book 2, sec. 262; Hargrave's Law Tracts, 15; Woolrych's Law of Waters, 53; Gould on Waters, (3d ed.) 310; *Houck* v. *Yates*, 82 Ill. 182; Hurd's Stat. 1903, chap. 24, sec. 19; *Lovingston* v. *St. Clair County*, 64 Ill. 59; *Chicago* v. *Ward*, 169 id. 406; *Mulry* v. *Norton*, 100 N. Y. 433; *Trustees* v. *Kirk*, 84 id. 217; *Wilson* v. *Shively*, 11 Ore. 218; *Wood* v. *Kelley*, 30 Me. 55; *Steel Co.* v. *Bilot*, 109 Wis. 434; *Smith* v. *Youmans*, 96 id. 109; *Mendota Club* v. *Anderson*, 101 id. 479; *Pewaukee* v. *Savoy*, 103 id. 271.

The public have the right of hunting and fishing in all meandered lakes, whether navigable or non-navigable. *Fuller* v. *Shedd*, 161 Ill. 462; *Railroad Co.* v. *Illinois*, 146 U. S. 387; *People* v. *Kirk*, 162 Ill. 138; *Willow River Club* v. *Wade*, 100 Wis. 86; *Railroad Co.* v. *Chicago*, 173 Ill. 471; 176 U. S. 646.

The title of appellant, as riparian owner of lands bordering upon the Illinois river, is subject to the right of the public in navigation and fishery. *People* v. *Kirk*, 162 Ill. 138; *Railroad Co.* v. *Illinois*, 146 U. S. 387; 176 id. 646; *Willow River Club* v. *Wade*, 100 Wis. 86; *Fuller* v. *Shedd*, 161 Ill. 462; *Langdon* v. *Mayor*, 93 N. Y. 129.

Fish and game in a wild state are incapable of individual ownership, and belong to the entire community collectively. Hurd's Stat. 1903, chap. 61, sec. 11; *Parker* v. *People*, 111 Ill. 588; *Magner* v. *People*, 97 id. 333; *People* v. *Bridges*, 142 id. 40; *State* v. *Lewis*, 134 Ind. 253; *Peters* v. *State*, 33 L. R. A. 115; *Vermont* v. *Theriault*, 43 id. 293; 13 Am. & Eng. Ency. of Law, (2d ed.) 556.

The riparian proprietor has no property in the water itself, but is entitled merely to the usufruct of the stream as it flows through or by his land. 24 Am. & Eng. Ency. of Law, (2d ed.) 980; *Willow River Club* v. *Wade*, 100 Wis. 86; *Lawson* v. *Mowry*, 52 id. 219; *Sweet* v. *Syracuse*, 129

218—8

N. Y. 316; Blackstone's Com. book 2, p. 18; *Smith* v. *Rochester,* 92 N. Y. 463; *Commissioners* v. *Kompsholl,* 26 Wend. 404; *Rigney* v. *Water Co.* 9 Wash. 576; *Concord Manf. Co.* v. *Robertson,* 66 N. H. 1; *Water Co.* v. *Strawboard Co.* 53 Fed. Rep. 970.

Our law does not contemplate that the riparian owner on navigable bodies of water shall have a monopolistic right to all fish and game, for the preservation and propagation of which all the people are taxed. *Magner* v. *People,* 97 Ill. 333; *People* v. *Bridges,* 142 id. 40; *Parker* v. *People,* 111 id. 588; *Fuller* v. *Shedd,* 161 id. 489; *Mendota Club* v. *Anderson,* 101 Wis. 492; *Willow River Club* v. *Wade,* 100 id. 86.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant filed his bill in this case in the circuit court of Mason county alleging that he was the owner in fee simple and was in possession of the lands therein described, amounting to about twenty-eight hundred acres, situated in the Illinois river bottom, bounded on the west by said river and on the north by the north line of Mason county; that they were swamp and overflowed lands, which were subject to overflow from the Illinois river in times of high water from natural causes; that prior to the construction of a certain lock and dam in said river and the opening of the canal of the Chicago Sanitary District the lands were valuable for pasture during the larger part of late summer and early fall, when the high waters had subsided, and a small part of the lands had been in cultivation; that by the construction of said dam and lock and canal the water in said river had been raised so as to overflow the said lands and render them practically worthless for pasturing stock; that large flocks of wild fowl frequented the land, and the only remaining value of the lands consisted of the right and privilege of hunting thereon; that such right gave the lands their only market value, and

that the appellees, who were insolvent, had repeatedly trespassed upon the lands and hunted over the same and threatened to continue hunting thereon. The bill prayed for an injunction restraining appellees from hunting over the lands of appellant, and a temporary injunction was granted. Appellees answered, alleging that by reason of the construction of the dam and lock in the river and the canal from Lake Michigan to said river the waters had been raised and covered the lands to a depth sufficient for navigation, and that thereby they and the public at large had acquired the right of navigation and the right of hunting and fishing in said navigable waters. The cause was heard upon evidence taken before the master in chancery, the injunction was dissolved and a decree was entered dismissing the bill for want of equity.

The following facts were proved: The lands border upon the Illinois river, and within their limits, lying near the river, there is a lake with two long, narrow branches, called Clear lake, one branch of which is sometimes called Mud lake. Clear lake is connected at its southerly end with the Illinois river, and extends, with its two branches, northerly and westerly about two miles and a half. There is a large tract of land between the two branches called the "middle grounds." In surveying the lands, Clear lake, with both its branches, was meandered by the government, and the lands were sold and are now owned in fee by appellant, who has paid the taxes and been in possession of them. In a natural state the lands were generally overflowed in the spring, and occasionally at other times during high freshets, to a depth of from six to twelve feet. The high water generally subsided in the late spring and the land would then be good for pasture, and about fifteen or twenty acres of it was in cultivation. About twelve or thirteen hundred acres was in timber, and the remainder was in willows and buck-brush, with large open spaces. Connected with Clear lake there were sloughs and low places, and in times of high water

canal boats or barges pushed by steam tugs passed up such sloughs to Haven's landing and Elm landing, a considerable distance above. These landings had no wharves or warehouses, but were merely points where grain was hauled by farmers to be loaded on the canal boats or barges and taken away. Some years ago a lock and dam was built at La-Grange, below the lands, which raised the water of the lake about eighteen inches, and afterward the sanitary district canal was opened, raising the water three or four feet more, so that the natural stage of the water in the river is about five feet higher than in its natural condition. The lands have been overflowed and rendered practically worthless for any purpose except hunting and fishing. Upon the lands there is wild rice, celery, nut grass, smart weed, lotus, and the like, furnishing abundant food for wild ducks. Appellant has sowed wild grass on the premises for food to attract the ducks, and it is a favorite resort for ducks and wild fowl and the lands are valuable for a hunting preserve.

It is not claimed that appellant owns any of the lands underlying Clear lake or Mud lake, both of which were navigable in a natural state and were meandered in the government survey. The claim of appellant is that he has the exclusive right to hunt upon the premises, of which he has the record title, by reason of his ownership of the soil; that the public generally, having no right, title or ownership in the lands, have no such right, and that to admit the public to the lands would result in frightening and driving away the game and destroy the only remaining value of the lands. Appellees do not deny that the appellant is the owner in fee simple of the premises and in the lawful possession of them, nor that they are subject to the burden of taxation, but they claim that the public have acquired the right to use the lands for the only purpose for which they have any value. Their position is, that by the inundation, resulting mainly from the drainage canal, the waters upon the land have become navigable in fact; that thereby the public have acquired not

only an easement of navigation, but a right to hunt and fish thereon, and that appellant has lost his title as against such rights so long as the submergence continues. Acknowledging appellant's ownership, the claim of appellees is stated as follows: "It is contended by appellees that by the permanent flooding of the lands in controversy that title was suspended or lost by the original proprietor, so far as excluding the public therefrom in the rights of navigation, hunting and fishery." That is the question to be determined on this appeal, and although the bill relates only to the right to hunt over the lands, counsel on both sides have treated the question as though it included the right to fish. They are agreed that if one right exists the other does also, and that they may be considered as concomitant rights if they exist at all. Counsel for the appellees have also discussed the question whether the appellant has the right to fish and hunt on the waters of the Illinois river within his ownership, but that question is not involved in this case in any manner and will not be decided. Whether prescriptive rights or usage could or do have any influence in determining the right to hunt or fish on the waters of the river will not be considered.

Both branches of Clear lake, one of which is frequently called Mud lake, having been meandered by the government, the title of the complainant before the inundation of his lands extended to the waters of the lake in their natural condition free from disturbing causes, and this would be so whether they were navigable or not. Where land is conveyed extending to a river and bounding upon it, the center of the stream is the line of the boundary; but in case of a natural lake or bed of water meandered by the government the grant extends to the water's edge, while the ownership of the bed of the lake is in the State in trust for all the people for the purpose of fishing, boating, and the like. (*Seaman* v. *Smith,* 24 Ill. 521; *Trustees of Schools* v. *Schroll,* 120 id. 509; *Fuller* v. *Shedd,* 161 id. 462; *People* v. *Kirk,* 162 id. 138; *Hammond* v. *Shepard,* 186 id. 235.) As appellant took title

to the water's edge he also acquired title to any land which might be added by accretions, and if the waters of the lake, by gradual and imperceptible progress, should encroach upon the surrounding land, he would lose the title to the lands so encroached upon. In either case, to have that effect the change in the boundary line must be gradual and imperceptible at any particular time. Where there is a gain of land little by little, by small and imperceptible degrees, it goes to the owner of the adjoining land, and where the lands are gradually encroached upon by the waters the title of the adjoining owner extends only to the water's edge. (*Fuller* v. *Shedd, supra.*) Where there is a sudden or marked change in the shore line and the lands of the adjoining owner are flooded or the course of a stream changed, the adjoining owner is not thereby divested of his title. (*Middleton* v. *Pritchard,* 3 Scam. 510; *Lovingston* v. *St. Clair County,* 64 Ill. 56.) Appellant did not lose his title to the lands by their submergence, and we do not understand counsel for appellees to claim that he did, except as against a supposed public right of navigation, hunting and fishery. The question whether the public acquired any right of navigation, or any other right, in the waters overflowing the lands of appellant is conceded to depend upon the question whether such waters are navigable, and on that question appellant insists that they are not navigable in fact while appellees insist that they are.

At the common law, waters were navigable only where the tide ebbed and flowed, and streams above tide water were not deemed navigable. The title to the soil under navigable waters was in the crown, and was held for the benefit of all the public for commerce, navigation and fishery. In navigable waters the shore owner took title to high-water mark, but above tide water he took title to the center of the stream. In this State the common law rule is not the test whether waters are navigable or not, and waters which are navigable in fact are navigable in law. But while the common law is

not in force here, because not adapted to our condition, so far as relates to navigation, it has been adopted so far as it relates to the questions of boundary and ownership. At common law the riparian proprietor had the exclusive right to fish in the waters covering the soil owned by him, to the center of the stream, and in *Middleton* v. *Pritchard, supra,* the court construed grants by the government according to the principles of the common law, where the government had done no act to qualify or exclude the right. In this State the public have an easement for the purpose of navigation in waters which are navigable in fact, regardless of the ownership of the soil, and the question whether these waters are navigable depends upon the question whether they are of sufficient depth to afford a channel for useful commerce. In some States, where the lumber interest has been regarded of first importance, the courts have held that waters which are capable of floating logs are navigable; but in *Hubbard* v. *Bell,* 54 Ill. 110, this court declined to adopt such a rule, and adhered to the doctrine that navigable waters must be capable of practical general uses. The rule stated by Lord Hale in his treatise *de jure maris,* that a stream, to be navigable, must furnish "a common passage for the king's people," must be "of common or public use for the carriage of boats and lighters," must be capable of bearing up and floating vessels for the transportation of property conducted by the agency of man, was approved. (*Joliet and Chicago Railroad Co.* v. *Healy,* 94 Ill. 416.) A stream is navigable in fact only where it affords a channel for useful commerce and of practical utility to the public as such. The fact that there is water enough in places for row boats or small launches answering practically the same purpose, or that hunters and fishermen pass over the water with boats ordinarily used for that purpose, does not render the waters navigable. In this case the evidence shows that a large part of the lands is covered with timber, buck-brush and willows and is incapable of use for navigation. The appellees were able to run

their boats into such places and conceal themselves for the purpose of hunting, but there are also large open spaces where the water is deep enough for purposes of navigation. It is not necessary that the waters should be navigable in all their parts in order that the public may have a right of navigation where the waters are deep enough and fit for such use. The evidence sufficiently shows that there are considerable spaces on these lands permanently submerged to such a depth that there is a right of navigation in the public.

The next question is whether the public have a right to hunt and fish where there is such a right of navigation as an incident to the latter right. Appellant insists that if his lands are subject to a public easement for the purpose of navigation it does not follow that he has lost his exclusive right to hunt and fish over them, while the position of appellees is, that wherever there is a public right of navigation there is also a right to hunt and fish. There is no natural or necessary connection between the easement of navigation, which is of the same character as a public highway, (3 Kent's Com. 427,) and the right to hunt and fish where such easement exists. They are in no manner connected with each other, and the two occupations are not prosecuted by the same individuals with the same vessels or by the same means. The Supreme Court of Michigan pointed out the difference and the distinction in such rights in the case of *Sterling* v. *Jackson*, 69 Mich. 488, saying: "The complainant claims that he had the right to shoot the wild fowl from his boat, because, as the waters were navigable where he was, he had the right to be there; that there being no property in wild fowl until captured, if he committed no trespass in being where he was, no action will lie against him for being there and shooting the wild duck. There is a plausibility in the position which, considered in the abstract, is quite forcible, and if applied to waters where there is no private ownership of the soil thereunder would be unanswerable. But so far as plaintiff is concerned, defendant had no right to be where he

was, except for the purpose of pursuing the implied license held out to the public of navigating the waters over his land. So long as that license continued he could navigate the water with his vessel and do all things incidental to such navigation. He could seek the shelter of the bay in a storm and cast his anchor therein; but he had no right to construct a 'hide' nor to anchor his decoys for the purpose of attracting ducks within reach of his shotgun." The court further said: "It does not follow that because a person is where he has a right to be he cannot be held liable in trespass. A person has the right to drive his cattle along the public highway, but he has no right to depasture the grass with his cattle in the highway adjoining the land of another person. * * * The defendant had the right of using the waters of the bay for the purpose of a public highway in the navigation of his boat over it, but he had no right to interfere with the plaintiff's use thereof for hunting, which belonged to him as the owner of the soil. The public had a right to use it as a public highway, but every other beneficial use and enjoyment belonged to the owner of the soil."

The argument that the riparian owner has no property in the particles of water flowing in a stream any more than he has in the air that floats over his land, and that the fish in the stream are not his property any more than the birds that fly over his land, does not tend to sustain the proposition that the public right of fishing is included in or incident of the public right of navigation. If the argument proves anything it proves too much, since it applies with as much force to waters which are not navigable as to waters which are. If the right to hunt and fish on the lands of an individual is in the public on account of the migratory nature of fowl and fish, the right does not, of course, depend in any way upon the other right of navigation, but the public may take the fowl or fish wherever it can be found. In our judgment, however, that argument has no force as applied to the question here involved. There is no private ownership of wild

game, but the exclusive right of every owner of land to kill and take game found from time time on his land is indisputable. This was regarded at common law as property *ratione soli,* or, in other words, as property by reason of the ownership of the soil. While there can be no absolute property in animals *feræ naturæ* while at liberty in their natural state, they become the property of the owner of the soil when killed or captured thereon, and the right to kill or capture them is exclusive in such owner. Whenever the owner's right is exercised, the animal killed or captured belongs absolutely to him, and he has a qualified property in game while on his own land. The title to wild game and birds in this State is in the State, as representing all the people, both by common law and by statute. But this is only true so far as such wild game or birds are capable of ownership. The ownership, such as it is, is not that of a proprietor, but of a trustee for the benefit of all the people in common. The general ownership is in the State for the use of the public, but when wild game or fowl are upon the private grounds of an individual a qualified or special right of property of the individual attaches to it, with the exclusive right to hunt, kill or capture while there. (*State of Arkansas* v. *Mallory,* 67 L. R. A. 773.) The law does recognize a qualified right of property in wild animals or birds as between the owner of the land on which they are found and a trespasser thereon. So, also, the owner of the soil has the absolute right to use and enjoy the waters flowing over the same, even if navigable, so long as he does not interfere with the public use for navigation or pollute the stream or diminish the supply.

While the fish in the waters and the birds that fly over the land or swim on the surface of the waters are not the absolute property of the owner of the soil, the absolute right to hunt and fish in such waters and on the land was in him by the common law, which is the law of this State unless we hold that it is not adapted to our condition. The decisions of this court have thus far recognized the existence of the

common law rule. In *Middleton* v. *Pritchard, supra,* although the question was not directly involved, the court recognized the rules of the common law in respect to the right to fish as being in force in this State. In *Beckman* v. *Kreamer,* 43 Ill. 447, the right to take fish in a small lake was involved. It does not appear whether the lake was meandered or whether it was navigable, but the court said: "By the common law, a right to take fish belongs so essentially to the right of soil in streams or bodies of water where the tide does not ebb and flow, that if the riparian proprietor owns upon both sides of such stream no one but himself may come upon the limits of his land and take fish there; and the same rule applies so far as his land extends, to-wit, to the thread of the stream, where he owns upon one side only. Within these limits, by the common law his right of fishery is sole and exclusive, unless restricted by some local law or well established usage of the State where the premises may be situate." *Braxon* v. *Bressler,* 64 Ill. 488, recognizes the rule that if waters are navigable in fact the public have only a right of easement or passage upon them as a highway, but that every other beneficial use is in the owner of the soil. In *Washington Ice Co.* v. *Shortall,* 101 Ill. 46, the right of the riparian proprietor on a navigable stream to the ice in front of his land was asserted, and the court recognized the common law rights of fishery, saying: "In *Adams* v. *Pease,* 2 Conn. 481, it was held that the owners of land adjoining the Connecticut river above the flowing and ebbing of the tide have an exclusive right of fishery opposite to their land, to the middle of the river, and that the public have an easement in the river as a highway, for passing and re-passing with every kind of water craft." In *Fuller* v. *Shedd, supra,* it was assumed that the right of fishery depends upon the ownership of the soil. In *People* v. *Bridges,* 142 Ill. 30, which was a prosecution for a violation of the act for the protection of fish, it was considered that the owner of the soil has the exclusive right to take fish, subject

to the legislative power to control and regulate the exercise of that right.

While the precise question involved in this case was not decided in any of those cases, they are all to the effect that the common law relating to the question is in force in this State. The principal argument for appellees is that it is not in force because these waters are navigable in fact, and the right to hunt and fish is an incident to the right of navigation. The decisions of this court have not rested upon any such ground, but have uniformly been made to depend upon the ownership of the soil, and we see no reason why the right to fish or hunt should depend in any manner upon the existence or non-existence of an easement of navigation. It was thought by the Supreme Court of Ohio in the case of *State* v. *Shannon,* 36 Ohio St. 423, that while a navigable stream is a public highway, the right to its use for that purpose is not obstructed or interfered with by protecting the owner of the fee in the exclusive right to kill game thereon. The right to fish in navigable waters is, of course, subordinate to the right of navigation and must be so used as not to prejudice that right, but the public easement will not be affected in any manner by protecting appellant in his right to hunt and fish over the water upon his own land. In our opinion appellant was entitled to a permanent injunction as to the lands of which he is the owner.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree permanently enjoining appellees from hunting upon the lands of which the appellant has the record title, which have been overflowed or inundated as alleged in the bill of complaint.

*Reversed and remanded.*