(No. 15238.—Decree affirmed.)

HENRY F. DUPONT, Appellant, *vs.* CORNELIUS R. MILLER *et al.* Appellees.

*Opinion filed October 20, 1923—Rehearing denied Dec. 6, 1923.*

1. WATERS—*State has jurisdiction over navigable waters within its borders.* Under the Ordinance of 1787, establishing the Northwest Territory, the State of Illinois has complete jurisdiction over all navigable waters within its borders, subject only to the power of the Federal government to enact such legislation and make such regulations as relate to interstate commerce.

2. SAME—*public has easement in navigable waters.* The public has an easement for the purpose of navigation in waters which are navigable in fact, regardless of the ownership of the soil.

3. SAME—*what determines whether or not water is navigable.* Whether water is navigable depends upon whether or not in its natural state it is used or capable of being used as a highway for commerce, over which trade and travel may be conducted in the customary modes of travel on water.

4. SAME—*a river once navigable may be preserved for future transportation.* If a river has once been navigable and open to the public it is within the power of the State to preserve it for purposes of future transportation though it be not at present used for commerce and though it be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions.

5. EASEMENTS—*what is a dedication to public use.* A dedication of land or water to public use is an appropriation or gift by the owner of the land or waterway of an easement therein for the use of the public.

6. SAME—*how dedication to public use is effected—intention.* An act of dedication may be by deed, or by opening the land or waterway without stating for what use, or by offering or permitting a public use with intention to so dedicate it; and the intention to dedicate may be manifested by the acts of the owner of the land or water in opening it up to public use or by a survey and plat, without any declaration, either oral or on the plat, as to his intention to set apart the land or waterway for public use.

7. SAME—*the public may acquire right of navigation in artificial waterways.* The public may acquire a right of navigation in privately constructed artificial bodies of water where there is some deed or act showing an intention to dedicate the use of such waterways to the public.

8. Same—*the State has not delegated its jurisdiction over navigable waters—res judicata.* The State has not, by charter or statute, delegated to the city of Chicago all its powers over navigable waters within the borders of the city in regard to easements for navigation, nor has it delegated power either to establish or release a public easement for navigation in waterways, and the fact that the city has been a party to a decree finding that certain property was privately owned and not subject to the public easement for navigation does not render the decree *res judicata* as to the right of the public to assert the easement in a subsequent proceeding.

Appeal from the Superior Court of Cook county; the Hon. Charles M. Foell, Judge, presiding.

Shannon & Morrill, for appellant.

Ednyfed H. Williams, and Rufus F. Robinson, for appellee Maude L. McLaughlin.

Edward J. Brundage, Attorney General, and John J. Beilman, (Clyde L. Day, of counsel,) for other appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellant filed his bill in January, 1921, in the superior court of Cook county, seeking to enjoin the appellees the director of the Department of Public Works and Buildings of the State of Illinois and the superintendent of waterways of said department from interfering with, hindering or obstructing him from constructing a bulkhead across the entryway of a waterway known in this record as the duPont slip or magazine slip. The bill alleges that this is a private waterway connected with the Chicago river, lying east of Halsted street, in the city of Chicago. The bulkhead is sought to be put in twenty feet from the mouth of the slip for the purpose of filling in this slip, which is eighty feet in width and approximately nine hundred feet in length, extending north from the south branch of the Chicago river. Said appellees answered the bill of complaint, alleging that the slip is a public and not a private waterway. During the hearing on issues made up, appellee Maude L.

McLaughlin, owner of a portion of the property abutting on the slip, petitioned to be allowed to intervene as a defendant. By stipulation in open court she was admitted as a defendant, with the understanding that her petition stand as her answer to the bill of complaint as amended, and that she also adopt the answer of the director of public works and the superintendent of waterways. The chancellor, on hearing, dismissed the bill for want of equity.

There is little dispute as to the controlling facts in the record. Most of them are stipulated. It is stipulated that the sole reason of defendants for preventing the complainant from constructing the proposed bulkhead is that they contend the waters of the duPont slip are public waters; that the use of the same is subject to State control to the extent provided by the acts of the legislature of this State referred to in the bill of complaint and the answer of the defendants, and that to permit the closing of the duPont slip would violate such acts and the laws governing navigable waters.

The facts concerning the construction of the slip are as follows: In 1864 the owners of various portions of a strip of ground bounded on the south by the Chicago river, on the west by Halsted street, on the north by Twenty-second street and on the east by Union avenue, in the city of Chicago, for the purpose of utilizing their property for shipping and dockage purposes excavated the slip now known as the duPont slip. It extends north from the Chicago river through approximately the center of the tract. This work was completed in 1870. The excavated tract was opened and filled with water from the Chicago river. In July, 1865, the owners of the portion of the described property lying east of the slip filed in the office of the recorder of Cook county a map or plat of a subdivision entitled Morris & Johnson subdivision. This slip is indicated on the plat filed. DuPont slip, when created, was of the depth of fourteen feet, opening only on the Chicago river. In 1902

the north one hundred feet of the slip were filled with rock
and earth, a bulkhead was put in and buildings erected
thereon. It is stipulated that at the present time the depth
of the water in the slip is irregular, varying from four feet
eight inches to thirteen feet eight inches. The docks along
the west side of the slip are in places in need of repair.
There are switch-tracks abutting on the slip on the land
of the appellant, which are his private switch-tracks. It
is also stipulated that the appellant is owner of the entire
tract of land included within the descriptions herein re-
ferred to, except that owned by appellee McLaughlin, sub-
ject to such rights of navigation in the public, if any, as
are held for the benefit of the public by the State of Illi-
nois in the slip.

In April, 1903, the appellant filed in the circuit court of
Cook county, under the Burnt Records act, his petition to
establish his title to the property herein referred to. This
petition made parties defendant those who were known to
claim any interest in the described property and unknown
owners or claimants thereof. The city of Chicago was also
made defendant, it being set out in the petition that a street
known as Lumber street had been laid out, extending east
and west between Union avenue and Halsted street, and
that Lumber street had been vacated by the city council so
far as the same affected the described property of the ap-
pellant. The city answered, setting up that an ordinance
had been passed vacating Lumber street and that the city
claimed no interest in the property. It is apparent from an
examination of the record in that proceeding as here dis-
closed, that no question of a public easement in the waters
in the slip was raised either by the petition or the answers
thereto. The decree entered in that cause held, however, in
effect, that the appellant had retained absolute jurisdiction
and control over the slip as a private slip for dockage pur-
poses, paid the expense of maintenance of the same, and
that the whole right, title and interest in the land and water

in the slip were at the time of the filing of the petition in appellant's predecessor in title. The decree adjudged and decreed the fee to be in him, free and clear of all incumbrances of every kind.

Appellant contends that the decree is *res judicata* of all questions as to his right to the slip as a private waterway. The appellees, on the other hand, contend, first, that the right of navigation in and over the waters of the slip was acquired by the public through dedication prior to the decree in the burnt records proceeding in 1903; second, that the burnt records proceeding is not *res judicata* of the rights of the public, and that the continued use of the slip as a public navigable waterway after that decree amounted to a re-dedication to public use.

The evidence of the appellant tends to show that the water in the slip has become stagnant, that the docks have become out of repair, and that since 1902 the slip has not been used for public navigation. The evidence of appellees shows that from the time of the construction of the slip, in 1870, up to within ten or twelve years before the filing of this suit in 1921, the slip was used by steamboats, sailing vessels, tugs, barges, canal boats, scows, etc., which were used in the commerce over the waters of Lake Michigan, the Chicago river and the Illinois and Michigan canal; that such boats continuously used the slip for loading, unloading and transferring cargoes from one boat to another or from boats to freight cars on the dock; that the slip was frequently used by boats passing up and down the river as a means of turning around; that boats of various kinds were laid up in the slip for the winter seasons and for repairs; that because of the lowering of the level of the Chicago river by reason of opening the canal in the Chicago Sanitary District, in 1905, and the increasing size and draft of freight-carrying boats, the slip in the last ten years has not been used to any appreciable degree. The evidence of the appellees also shows that no charge was ever made for

the use of the slip, that no barrier has ever been constructed to keep the public from navigating it, and that the public have never been denied free access thereto; that by various ordinances of the city of Chicago passed in 1905, 1912 and 1913 this slip was included in the Chicago harbor district and placed under the control of the harbor master. It is stipulated that the appellant has paid no taxes on the land covered by the slip since 1903, and that it has always been the custom to assess no taxes on slips used by boats plying the Chicago river. None of this evidence of continued use of the slip by the public as a public waterway is disputed.

By the Ordinance of 1787 establishing the Northwest Territory, the State of Illinois has full and complete jurisdiction over all navigable waters within its borders, subject only to the power of the Federal government to enact such legislation and make such regulations as relate to interstate commerce. (*Economy Light and Power Co.* v. *United States,* 256 U. S. 113; *Cummings* v. *City of Chicago,* 188 id. 410.) Under the common law, navigable waters were limited to those affected by the ebb and flow of the tide. This rule does not obtain in this country. Since the cases of *The Daniel Ball,* 10 Wall. 557, and *The Montello,* 20 id. 430, the test has been whether or not the water in its natural state is used or capable of being used as a highway for commerce, over which trade and travel may be conducted in the customary modes of travel on water. The rule in this State is that the public have an easement for purpose of navigation in waters which are navigable in fact, regardless of the ownership of the soil. Whether such waters are navigable depends upon whether they are of sufficient depth to afford a channel for use for commerce. *Schulte* v. *Warren,* 218 Ill. 108.

It cannot well be doubted that the slip in this case was for many years subsequent to 1870 used for purposes of navigation, but counsel for appellant urge that there cannot now exist any easement or right of navigation therein be-

310—10

cause it is not now, in fact, navigable; that portions of it have been filled in and the entrance to it is so shallow as not to admit boats of the size ordinarily used in commerce on the lakes and rivers. The rule as announced in *Economy Light and Power Co.* v. *United States, supra,* is, that if a river has once been navigable it is within the power of Congress to preserve it for purposes of future transportation though it be not at present used for commerce and though it be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions. In that case the Desplaines river was held to be navigable though the record showed that for one hundred years it had not, in fact, been navigated. There is no doubt that for forty years after the opening of this slip it was navigated, and the record shows that with a comparatively small expense it can be cleaned out and restored to its full usefulness as navigable water.

Appellant contends, however, that though it was, in fact, navigable, it is an artificial body of water, created at private expense for private purposes only, and that the public never obtained an easement therein. Appellees reply that there was a dedication by appellant's grantors, and that by means of that dedication and the use of it by the public as public waters an easement was created. It is not contended that there was a statutory dedication or one in writing but that there was a common law dedication.

A dedication of land or water to public use is defined as the appropriation or gift by the owner of the land or waterway of an easement therein for the use of the public. The act of dedication may be by deed or by opening the land or waterway without stating for what use, or by offering or permitting a public use with intention to so dedicate it. (18 Corpus Juris, 38.) There must be clear and satisfactory proof both of the intention of the owner to dedicate the land or waterway and the acceptance thereof by the public. (*City of Chicago* v. *Borden,* 190 Ill. 430.)

The intention to dedicate may be manifested by the acts of the owner of the land or water in opening it up to public use, or it may be shown by a survey and plat, without any declaration, either oral or on the plat, that it was the intention of the proprietor to set apart the ground or waterway for public use. (*Owen* v. *Village of Brookport,* 208 Ill. 35; *Maywood Co.* v. *Village of Maywood,* 118 id. 61.) Where the owner testifies as to his intention, he may be contradicted by his acts and conduct or declarations. His statement of his intention may be considered with the other facts in the case. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561; *McIntyre* v. *Storey,* 80 id. 127; 1 Greenleaf on Evidence, 84, note.) Cases cited by counsel for appellant which hold that privately constructed waterways are not charged with a public easement will all be found to be based on the fact that there was no deed or other act showing an intention to dedicate the use of such waterways to the public. It is not argued that the public right of navigation may not be acquired in privately constructed artificial bodies of water. Such right has been recognized in different States in this country. *Diana Shooting Club* v. *Lamareaux,* 114 Wis. 44; *Missouri Pacific Railway Co.* v. *Keys,* 55 Kan. 305; *Connecticut River Lumber Co.* v. *Olcott Falls,* 65 N. H. 290; *Stump* v. *McNairy,* 24 Tenn. 363; Gould on Waters, 443; 27 R. C. L. 1204.

The continued use of this waterway for more than forty years with the knowledge of appellant; the passage of various ordinances making it a part of the Chicago harbors and placing it under the control of the harbor master of that city, which also must be held to have been with the knowledge of appellant; the fact that appellant and his grantors have paid no taxes on the land underlying the slip, and the general indiscriminate use of the slip as a public waterway without any attempt on the part of appellant or his grantors to charge a fee therefor and without objection or in-

terference on their part, clearly indicate an intention on their part to dedicate this waterway to public use.

Appellant also contends that even though the waterway became charged with a public easement, the decree of the circuit court under the Burnt Records act destroyed any such easement and decreed the slip to be the private property of appellant. The argument is that the city of Chicago was made a party, and the legislature having given to that city the control of the harbors within its boundaries, the decree against it is likewise a decree against the State. As we have seen, control of navigable waterways within the State is primarily vested in the legislature. The charter of the city of Chicago, granted in 1863, gave that city the power to lease wharfing privileges on the river; to remove and prevent obstructions in waters which were public highways in the city; to preserve the harbors; to prevent any use of the same inconsistent with or detrimental to public health; to regulate and prescribe the mode and speed of entering and leaving the harbors for various water craft; and to regulate the use of the harbors by such vessels through a harbor master or other authorized official. The Cities and Villages act, by section 1 of article 5 thereof as it existed in 1903, gave similar powers to city councils of cities, including, in addition thereto, power to construct and keep in repair canals and slips for the accommodation of commerce, and to license and regulate wharfboats, tugs and other craft used in and about the harbor; to fix wharfage and dockage rates; to provide for the cleansing and purification of waters, etc. In 1911 the legislature created the Rivers and Lakes Commission, and later, by an act known as the Civil Administration Code, entire jurisdiction and control of easements and navigation of public waters passed to the Department of Public Works and Buildings of the State.

While there is no debate as to the general rules relating to the effect of a decree against all parties in privity where

the subject matter is the same, it being universally held that such parties are bound by the decree of a court of competent jurisdiction adjudicating the subject matter, (*Close* v. *City of Chicago,* 257 Ill. 47; *McCampbell* v. *Mason,* 151 id. 500;) appellees contend, first, that the State by the charter to the city of Chicago and by the Cities and Villages act has not conferred upon that city all powers relating to public easements over navigable waters within the borders of that city;. that by such means there was conferred upon the city of Chicago authority to enact and enforce certain police regulations but that complete authority over the waterways was not given. In the case of *Ligare* v. *City of Chicago,* 139 Ill. 46, an attempt was made by the city of Chicago to close and fill up Ogden slip. This court there said: "Power is given the city by the 31st clause of section 1, article 5, chapter 24, of the Revised Statutes of 1874, page 218, 'to construct and keep in repair, canals and slips for the accommodation of commerce,' but we have found no power granted to the city to close them and fill them up." No case or statute has been here cited giving such power to the cities of the State, and we are aware of none.

We are of the opinion that the State, by the charter and act referred to, did not delegate to the city of Chicago all its powers over the navigable waters within the borders of said city, concerning easements for navigation; that it has never delegated to that city the power to release a public easement for navigation in waterways. The city of Chicago having no such power, could not, by any answer made in a burnt records or other proceeding, bind the public concerning the public easement in the duPont slip. The decree in the burnt records proceeding did not foreclose the rights of the public in this waterway. It may also be said that the record in this case shows the use of this waterway by the public for a substantial period of time after the entry of the decree in the burnt records proceeding.

It is made the duty of the State to secure the public easements against encroachment, and it appears from the record that by the completion of the proposed Illinois waterway, as provided in the Waterway act, (Smith's Stat. p. 121,) the waterway in question, and others of like character, will be needed for the accommodation of water traffic between the lakes and the gulf, and in refusing to permit this slip to be filled in the officers of the State were not only within their powers, but were carrying out. the duty imposed upon them by the legislature to preserve to the State and the people, fully and unimpaired, the rights which the people have in the public waters of the State.

The superior court was right in dismissing the bill for want of equity, and the decree will be affirmed.

*Decree affirmed.*