RICHARD J. VOTAVA, Plaintiff-Appellant, *v.* MATERIAL SERVICE CORPORATION, Defendant-Appellee.

Second District   No. 78-489

Opinion filed July 19, 1979.

Raymond Agrella, of Shearer, O'Brien, Blood, Agrella and Boose, of St. Charles, for appellant.

Stephen A. Milwid, of Lord, Bissell and Brook, of Chicago, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of a personal injury suit wherein the complaint filed is in three counts. Count I is for a maritime tort committed in navigable waters of the United States (*viz.*, negligent maintenance and operation of a submerged barge). Count II is for willful and wanton negligence in connection with the operation and maintenance of said barge and count III was added by amendment on the eve of trial and is based on simple negligence.

The plaintiff is the owner of a 17-foot motor boat. On July 14, 1974 (a Sunday), he and three companions were operating this boat on the Illinois River, water skiing and swimming in the vicinity of the defendant's sand and gravel operation. Defendant operated a "wet" sand and gravel pit about 3,500 feet from the Illinois River which is reached from the Illinois River by means of a channel 100 to 300 feet wide. The pit had originally been a dry one but was converted to a "wet" pit after the channel was dredged out and the water entered, forming a body of water described as a "lake" which was several square miles in area.

A pontoon bridge had been erected by the defendant to block the quarry or pit area from the channel and prominent "No Trespassing"

signs were at several points in the channel, as well as at the entrance to the quarry area, warning that this was private property and trespassers would be prosecuted. The pontoon bridge was not in place blocking the channel at all times but was maintained there on weekends, at least during daylight hours, to prevent water skiers and private pleasure boat operators from entering and using the quarry lake as a recreation area. After nightfall, when it was supposed that pleasure boats and skiers were no longer operating in the vicinity, the pontoon bridge was withdrawn so that the barges of the defendant and other barge operators could use the channel, either for delivery or for laying up during the night. There was testimony indicating that when trespassers were found in the quarry lake area, at the end of the day, they were required to leave and in one instance a boat which did not leave during daylight hours was kept in the lake by the pontoon bridge overnight.

There was a partly submerged barge located at one side of the lake area which was used for storing equipment and supplies of the defendant. The defendant testified that this barge had been in the same location for about 15 years. There was testimony to the effect that on the Sunday in question the plaintiff and his friends, after water skiing in the river proper, decided they would like to ski in the quarry lake area. They approached the pontoon bridge and inquired of some tug crew members near the bridge whether they could enter. They were told that it was private property and they could not enter the quarry lake with the speed boat. At about 8 p.m., there being no pleasure boats in sight on the lake, the pontoon bridge was removed. Shortly thereafter, the plaintiff and his friends decided to enter the quarry lake area. While inside the lake area, at about dusk, they ran out of gasoline and when they managed to siphon enough gasoline out of two cans to start the engine of the motor boat, it was dark. Proceeding toward the entrance of the channel, they ran into the submerged barge in the quarry lake. One of the youths was killed and the plaintiff was seriously injured.

At the close of the plaintiff's case, the defendant moved to strike the complaint as to count I, which motion the trial court eventually allowed. The plaintiff amended his complaint to add count III on the eve of the trial and that count was also dismissed, leaving only count II, the willful and wanton negligence count, to be presented as an issue to the jury. The jury returned a "not guilty" verdict on that count.

In this appeal, the plaintiff contends that the court erred: (1) in dismissing count I on the basis that the waters where the accident occurred were not, in fact, navigable waters and (2) in dismissing count III under the amended complaint on the ground that the defendant had not violated any duty to the plaintiff and, moreover, the plaintiff was guilty of contributory negligence.

As to count I, sounding in admiralty law, the plaintiff contends that the evidence adduced at trial established that the public made frequent and uncontested use of the channel and the quarry lake in question for pleasure boating, with the knowledge and consent of the defendant. There was evidence that the defendant's attempts to keep the public from using the quarry lake for pleasure craft was less than efficient and was ineffective over a long period of years. Plaintiff contends that the use by the public, while not officially permitted, was condoned to an extent sufficient to raise a question regarding the navigability of the waters in question and present a jury issue.

■■ We do not, however, regard the evidence adduced by the plaintiff as by any means sufficient to establish that the waters of the quarry lake were navigable waters. The lake in question was on private land and used for the defendant's private business purposes. It was not used in commerce generally but only for barges and by the defendant or by others associated with the defendant's business. The occasional use of the lake for pleasure purposes by members of the public was officially prohibited by the defendant and in practice was discouraged within the practical limits allowable, considering the need to keep the channel open for barges which arrived on irregular schedules. An occasional violation of the "No Trespassing" edict does not, in our opinion, amount to a dedication for public use so as to make the waters navigable. To constitute a dedication of a body of water for public use:

> "There must be clear and satisfactory proof both of the intention of the owner to dedicate the land or waterway and the acceptance thereof by the public." *DuPont v. Miller* (1923), 310 Ill. 140, 146.

Here there was obviously no intention to dedicate the quarry lake in question, but on the contrary continuous efforts were made to prevent the lake from being used by the public. This is indicated not only by the pontoon bridge across the mouth of the channel and the "No Trespassing" signs, but by the many actual concrete instances in which members of the public were ordered by the defendant to leave the lake area after they had gained entrance during some hour when the pontoon bridge was not in use as a matter of convenience for the passage of barges or during week days when a less strict watch was kept on trespassers. Richard Stephens, yard superintendent for the defendant, testified that during the week days, when the pontoon bridge across the mouth of the channel would be open, he kept watch on pleasure craft entering the lake area and when he spied one he would "tell one of the tugs to run him out." If the pleasure craft was close enough to the land for him to speak to the owner personally, he would walk over to the boat and tell the people to leave. He acknowledged that when the bridge was not shut because of a tug about to leave or enter or having just done so, members of the public

would occasionally take advantage of the opening to make a brief foray into the lake, in which case the defendant's employees would "have to run them out." Stephens testified specifically that the company "don't allow nobody" into a lake area except for commercial barges. Picnickers and campers, he testified, occasionally tried to come into the area, but the defendant's employees would "run them out."

■■ It is evident from the maintenance of the pontoon bridge across the mouth of the channel and the long-continued policy of driving out trespassers—which policy, so far as is indicated in the briefs and pleadings—has never been seriously challenged, that the use of the quarry lake by the public was sporadic, clandestine and continuously challenged and never even approached the conditions requisite for a dedication of a private waterway. The cases cited by the plaintiff such as *Schulte v. Warren* (1905), 218 Ill. 108, merely indicate that under certain conditions a body of water which is used generally by the public may be considered to have acquired the character of navigable waters but this does not by any means contradict the doctrine of *DuPont v. Miller* (1923), 310 Ill. 140, which clearly indicates that a body of water arising on private property as the result of the landowner's operation of a quarry, remains a private body of water unless there is a "clear and satisfactory proof both of the intention of the owner to dedicate the land or waterway and the acceptance thereof by the public." The opposite intention having been manifested consistently over a long period of time in this case, we see no relevance in the cases cited by the plaintiff. In our opinion, the waters of this quarry lake resulting from the defendant's sand and gravel dredging and open only to commercial barges, never became navigable waters. Consequently, the count sounding in admiralty law was properly stricken.

■ This leaves for consideration the count based on common law negligence. Since we agree with the trial court's finding that the waters in question were not navigable waters, so as to invoke Admiralty jurisdiction but were, rather, private waters, we must consider the negligence count with respect to the plaintiff's status as a trespasser in those waters. It is unquestionably the law in Illinois that no duty is owed to a trespasser or a mere licensee by the owner of land except the duty not to willfully and wantonly injure him. (*Marcovitz v. Hergenrether* (1922), 302 Ill. 162; *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500; *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83.) A distinction is made in the Illinois Supreme Court Committee Comment on Jury Instructions between those cases where the mere condition of the land or property gave rise to the injury and those cases where the owner or occupant of the land actively did something which injured the plaintiff. This is the distinction made in connection with the Note on the use of Illinois Pattern Jury Instruction, Civil, No. 120.02 (2d ed. 1971) (injury caused by

condition of the premises) and the Note as to IPI Civil No. 120.03 (injury caused by owner's activities). The cases cited by the plaintiff only confirm this distinction. In *McDaniels v. Terminal R.R. Association* (1939), 302 Ill. App. 332, the employees of the defendant railroad company negligently threw lumber from above down onto a path frequently traveled by the public, resulting in injury to the plaintiff. This was a positive act of wrongdoing. In *Shine v. Wabash R.R. Co.* (1956), 8 Ill. App. 2d 521, the plaintiff was struck by the defendant's train, again a positive action by the defendant. *Phillips v. J. F. Martin Cartage Co.* (1976), 42 Ill. App. 3d 890, was a case involving a child, for which the rule as to trespassers is more liberal. Even in that case, which involved merely the condition of the premises and no action by the defendant-owner, the appellate court reversed the trial court and ordered a directed verdict for the defendant. In the case before us there is no evidence to indicate that the defendant's employees were aware of the presence of the plaintiff in their waters immediately before the accident and, in fact, the accident occurred after dark when visibility was too poor for either the defendant to note the presence of the plaintiff or for the plaintiff to see the partly submerged barge which his boat struck in the dark. It is apparent that there was no failure of duty by the defendant toward the plaintiff under the circumstances existing here and the trial court properly dismissed this count.

Lastly, the plaintiff contends the trial court erred in allowing defendant's counsel to cross-examine plaintiff's witnesses (apparently his companions) by using complaints filed by these said witnesses. We do not think it necessary to consider this contention. We have ruled that count I was properly dismissed because the waters were not in fact navigable waters and that count III was properly dismissed because there was no duty toward the plaintiff which was breached by the defendant. The jury returned a verdict for the defendant on count II, the willful and wanton count, and count II was not appealed. We believe that disposes of the case, and we see no reason to further discuss the effect of pleadings in related but separate counts.

The judgment of the circuit court of Kane County is affirmed.

SEIDENFELD and WOODWARD, JJ., concur.