(No. 23183.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, *et al.* Appellees, *vs.* PATRICK E. McDONNELL, Appellant.

*Opinion filed December 19, 1935.*

COBURN, KEARNEY & COBURN, (JOHN J. COBURN, of counsel,) for appellant.

OTTO KERNER, Attorney General, (JEROME F. DIXON, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On May 11, 1934, the People, on the relation of the Attorney General and the Director of the Department of Public Works and Buildings, filed their complaint in the circuit court of Cook county praying that the defendant, Patrick E. McDonnell, be perpetually enjoined from encroaching upon the right of way of the Illinois and Michigan Canal, which they alleged to be a part of the public lands of the State of Illinois. The bill as amended alleged that the State of Illinois was the owner of the Illinois and Michigan Canal, and that it could not be sold or leased

until the subject of its sale or lease was first submitted to a vote of the people at a general election; that a portion of the canal is located in section 36, township 39 north, range 13 east of the third principal meridian, in Cook county. An act of Congress was passed on March 30, 1822, authorizing the State of Illinois to open a canal through the public lands to connect the Illinois river with Lake Michigan. It provided that a ninety-foot strip of land on each side of the canal should be forever reserved from sale by the United States. The use of the strip was forever vested in the State of Illinois, on condition that if the State did not survey and direct the canal to be opened and return a complete map thereof to the treasury department of the United States within three years after the passage of the act, or if the canal was not completed within twelve years, or if the land should ever cease to be occupied and used for a navigable canal, the reservation and grant made were to be void. The bill further alleged that the conditions of this act were not carried out by the State of Illinois, but that on March 2, 1827, Congress passed an act entitled, "An act to grant a quantity of land to the State of Illinois for the purpose of aiding in opening a canal to connect the waters of the Illinois river with those of Lake Michigan." By it the State of Illinois was granted a quantity of land equal to one-half of five sections in width on each side of the canal. The alternate sections along the canal were reserved to the United States. The act further declared that the canal should become a public highway for the use of the United States government, free from any toll or other charge for any property of the United States, or the persons in its service, passing through it. As soon as the route of the canal should be located it was made the duty of the Governor to examine and ascertain the particular sections to which the State was entitled under the act and to report the same to the Federal government.

On January 22, 1829, the General Assembly passed an act entitled, "An act to provide for constructing the Illinois and Michigan Canal," which provided for the appointment of commissioners to effect that object, and directed them to cause an examination to be made to determine the most eligible and proper route for the canal, to select the alternate sections of land granted to the State by the act of Congress of 1827 above referred to, and to begin construction of the canal as soon as practicable. The State of Illinois returned to the treasury department of the United States a complete map of the route of the canal connecting the Illinois river with Lake Michigan, which showed the sections granted to the State and those reserved to the United States.

On January 9, 1836, the General Assembly passed an act entitled, "An act for the construction of the Illinois and Michigan Canal." It changed the dimensions of the canal from those prescribed in the earlier act, and gave the commissioners power to lease the ninety-foot strip on each side of the canal for the best price obtainable, the proceeds to be paid into the canal fund. Construction was begun in 1837 and the canal was completed in 1848. It was dug upon the route shown by the map filed in the treasury department.

The bill alleged that upon its completion the Illinois and Michigan Canal became part of the navigable waters of the United States and until now has continuously been part of such waters. By act of Congress approved March 3, 1899, it is provided that the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States, is prohibited, and that it shall not be lawful to excavate or fill, alter or modify, the course, location, condition or capacity of any canal unless the work has been recommended by the chief of engineers and authorized by the Secretary of War. It was alleged that Congress never authorized the

creation of any obstruction to the navigable capacity of the Illinois and Michigan Canal or any part thereof; that the chief of engineers has not recommended and the Secretary of War has not authorized any alteration or modification of the course, location, etc., of the canal. It was alleged that the State of Illinois is now the owner in fee simple of the bed of the Illinois and Michigan Canal and that the canal is now a part of the navigable waters of the State of Illinois and of the United States. The bill further alleged that the defendant has encroached upon the canal and has entered on section 36 and elsewhere along the course of the canal, and has thrown and caused to be thrown, garbage, offal and other offensive matter into the canal, and has obstructed the canal by dumping dirt, offal, refuse, etc., in the canal, and has refused to permit the employees and agents of the State to enter or go upon the bed of the canal, and has refused to permit the State to erect signs or markers on that portion of the canal, and that the facts alleged constitute an enroachment upon the property of the State and is a public nuisance. It is alleged that the acts charged have been committed without the consent of the Director of the Department of Public Works and Buildings of Illinois. The defendant has been repeatedly notified of the encroachments, but has continued to commit the acts charged and threatens he will fill up the canal and use the same for his own purposes, and will do so unless restrained by the injunction of the court.

The defendant by his answer claimed title in fee simple by *mesne* conveyances from one Frederick Bronson, who obtained a patent, without any reservation whatever, from the United States government. He denied that the State of Illinois was the owner in fee simple of the land in question in section 36, and admitted that the canal commissioners selected the odd sections along the canal while the government reserved the even sections, of which section 36 is one. He denied that the consent of Congress, the War

Department and the United States chief engineer for the alteration and modification of the course of the Illinois and Michigan Canal was necessary. He claimed that the State of Illinois enjoyed a mere easement in the channel for navigation purposes, only. He set forth in his answer that after the canal was constructed it was over six feet above the waters of the Chicago river at its Bridgeport and Robey street end; that pumps were installed to pump the water up to the level of the canal; that by 1885 there was little or no commerce on it, and that the income of the canal did not pay its up-keep. He alleged that the State of Illinois, through the Sanitary District of Chicago, had constructed the drainage canal, which started at Robey street, a few hundred feet north of the old Illinois and Michigan Canal and which ran parallel thereto to Lock-port and Joliet, where it connected with the Illinois and Michigan Canal; that the new channel was much larger and more navigable; that the Illinois and Michigan Canal was then entirely abandoned for traffic purposes between Lockport and Robey street; that the pumps at Bridgeport were removed with the consent of the government and chief engineer and water was no longer pumped into the canal at Bridgeport; that the State of Illinois permitted its agent, the sanitary district, to construct the Calumet Sag channel across the bed of the Illinois and Michigan Canal at a depth of fifteen feet below the general level of the bed of the Illinois and Michigan Canal, about half way between Chicago and Joliet, at a place called Sag. This channel was connected with the main channel of the drainage canal. It was further alleged that the water ran out of the old canal, leaving a few stagnant pools, and that the channel was filled up for miles and miles. Defendant alleged that since 1900 there has been no navigation of any kind in the old channel from Joliet to Robey street. By reason of the foregoing facts it was claimed that the easement of the State of Illinois had been lost and abandoned.

The case was referred to a master on the bill and answer. After a hearing the bill was amended so as to allege, substantially, the facts set forth above. All claim was abandoned to the ninety-foot strips of land on each side of the channel in section 36. The master found for the plaintiffs, and the chancellor entered a decree finding that the defendant had encroached upon the canal right of way of the State in section 36, that he was engaged in filling it up, and enjoined him permanently from encroaching upon the canal. From this decree the defendant appealed.

The appellant contends that the State had only an easement, which it abandoned by non-user and by changing the channel of the old canal by building the drainage canal through its agent, the sanitary district. The appellees contend that no abandonment of the Illinois and Michigan Canal has occurred, and that in order to deprive the State of Illinois and the Federal government of the control of this canal, which became and is a part of the navigable waters of the United States and of this State, an act of Congress is required.

It was held that the Illinois and Michigan Canal was one of the navigable waters of the United States, in *Ex parte Boyer,* 109 U. S. 629. Since that is true, and although the canal was an artificial waterway, it is within the power of the State to preserve the canal for future transportation; and this is true even though at the present time it is incapable of such use. *DuPont* v. *Miller,* 310 Ill. 140; *Economy Light and Power Co.* v. *United States,* 256 U. S. 133. See, also, *Burke* v. *Snively,* 208 Ill. 328.

In the *DuPont case* the appellant sought to enjoin the Director of the Department of Public Works and Buildings of Illinois, and the superintendent of waterways of that department, from interfering with, hindering or obstructing him from constructing a bulkhead across the entrance to an artificial waterway known as the DuPont

(or magazine) slip, which was connected with the Chicago river. At page 145 of that decision we said: "It cannot well be doubted that the slip in this case was for many years subsequent to 1870 used for purposes of navigation, but counsel for appellant urge that there cannot now exist any easement or right of navigation therein because it is not now, in fact, navigable; that portions of it have been filled in and the entrance to it is so shallow as not to admit boats of the size ordinarily used in commerce on the lakes and rivers. The rule as announced in *Economy Light and Power Co.* v. *United States, supra,* is, that if a river has once been navigable it is within the power of Congress to preserve it for purposes of future transportation though it be not at present used for commerce and though it be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions. In that case the Desplaines river was held to be navigable though the record showed that for one hundred years it had not, in fact, been navigated. There is no doubt that for forty years after the opening of this slip it was navigated, and the record shows that with a comparatively small expense it can be cleaned out and restored to its full usefulness as navigable water." On page 150 we continued: "It is made the duty of the State to secure the public easements against encroachment, and it appears from the record that by the completion of the proposed Illinois waterway, as provided in the Waterway act, (Smith's Stat. p. 121,) the waterway in question, and others of like character, will be needed for the accommodation of water traffic between the lakes and the gulf, and in refusing to permit this slip to be filled in the officers of the State were not only within their powers, but were carrying out the duty imposed upon them by the legislature to preserve to the State and the people, fully and unimpaired, the rights which the people have in the public waters of the State."

In the *Economy Light and Power Co. case* it is said, at page 124: "If they are to be abandoned, it is for Congress, not the courts, so to declare. The policy of Congress is clearly evidenced in the act of 1899, and in the present case at least, nothing remains but to give effect to it."

No act of Congress or of the legislature of our State has been passed expressly abandoning the Illinois and Michigan Canal. On the other hand, the appellees call attention to the fact that sections 49 and 52 of the Civil Administrative Code (Ill. State Bar Stat. 1935, p. 786; 127 S. H. A. 49, 52;) and paragraphs 32 and 33 of chapter 19, (ibid. p. 199; 19 S. H. A. 32, 33;) give supervision of the Illinois and Michigan Canal to the Department of Public Works and Buildings, provide against and authorize the removal of obstructions in the canal as originally constructed, and authorize and direct the Attorney General to institute and prosecute whatever suits are necessary to protect and maintain the rights of the State in and to this canal throughout its entire ninety-six-mile course, from the south fork of the South Branch of the Chicago river to the point at which it connects with the Illinois river at LaSalle.

From what has been said it fully appears that no right of the State of Illinois has been abandoned in and to the Illinois and Michigan Canal. It was a part of the navigable waters of the United States, and it could not become otherwise, regardless of its physical condition of unnavigability, without an act of Congress. The Attorney General and Director of the Department of Public Works and Buildings were authorized by statute and directed to protect and maintain this canal and the rights of the public therein.

The decree of the circuit court of Cook county was correct, and it is affirmed. *Decree affirmed.*