897 F.2d 1423
 Barbara PUCKETT, as Administrator of the Estate of Edward A.
Wanago, Plaintiff-Appellant,
v.
SOO LINE RAILROAD COMPANY, a Minnesota Corporation, Lonnie
R. Maves and Chris Gust, Defendants-Appellees.
 No. 89-2186.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 15, 1989.
Decided March 22, 1990.
 
 Alfred D. Stavros, Wheeling, Ill., Joseph L. Planera, Chicago Heights, Ill., for plaintiff-appellant.
 Robert J. Hourigan, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for defendants-appellees.
 Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 A train owned and operated by the Soo Line Railroad Company (the "Soo Line") struck and killed Edward Wanago as he crossed a set of railroad tracks on the south side of Chicago. Barbara Puckett, Wanago's stepdaughter and the administrator of his estate, brought this diversity suit against the Soo Line and two of its employees, Lonnie Maves and Chris Gust, claiming that the defendants' negligent operation of the train caused Wanago's death. After the parties submitted various affidavits, the defendants moved for summary judgment. The district judge, concluding that Puckett had failed to produce any evidence supporting the elements of her case, granted the motion on May 12, 1989. Puckett now appeals from that decision and we reverse.
 
 I.
 
 2
 On the misty night of March 12, 1986, Edward Wanago walked along the sidewalk toward the 55th Street crossing of the Indiana Harbor Belt railroad tracks. The crossing has flashers, bells and automobile gates, but no pedestrian gates. The parties do not dispute that these safety devices operated properly on the night of March 12.
 
 
 3
 Maves, the engineer, and Gust, the brakeman of the Soo Line train, sat in the rear of the locomotive as the train sped north along the easternmost set of three tracks toward the 55th Street crossing. Both men looked down the track several times as it approached the crossing, but neither saw anything unusual. Gust stated in his deposition that he first observed Wanago when the train was two to three car lengths (approximately 100 to 150 feet) from the crossing. Gust did not take any immediate action, he said, because Wanago was standing on the west rail of the middle set of tracks, not "bothering anything." Gust noticed that Wanago wore a cap with ear flaps and that, as he watched Wanago, Wanago never looked at the approaching train. Gust Dep. at 120-21. Gust thought that "maybe he [Wanago] didn't hear the train." Id. at 125.
 
 
 4
 Within seconds of seeing Wanago, Gust watched Wanago "shuffle" toward the tracks. He yelled to Engineer Maves to "plug it!"--to engage the emergency brake--but it was too late: the locomotive skidded 400-500 feet past the crossing, striking and killing Wanago. Maves never saw Wanago, nor did Thomas Kuckes, the train's conductor; Gust saw him for just an instant before the accident.
 
 
 5
 Barbara Puckett brought suit against the Soo Line, Maves and Gust for negligently operating the train; each side presented expert testimony regarding the operation of the train and the adequacy of the defendants' lookout. Further, Maves, Gust and Kuckes testified in their depositions that the train travelled at an appropriate speed for the evening's weather conditions; Puckett stated that her stepfather was a careful man who would not cross a street against the traffic signals. The district judge considered this evidence and held, as a matter of law, that the defendants were entitled to summary judgment. Puckett appeals from that decision.
 
 II.
 
 6
 Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Any doubts about the sufficiency of the evidence should be resolved in favor of the nonmoving party. Rodeo v. Gillman, 787 F.2d 1175, 1177 (7th Cir.1986). Of course, we review de novo a district court's grant of summary judgment. Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 360 (7th Cir.) (per curiam), cert. denied, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987).
 
 
 7
 Here, Barbara Puckett makes two arguments against the district judge's grant of summary judgment. She alleges that a genuine issue of material fact exists, first, regarding the crew's failure to see her stepfather in the tracks and to stop the train in time, and second, concerning the crew's failure to sound the horn or whistle to alert Wanago of the approaching train. We address each allegation in turn.
 
 A. Failure to Stop the Train
 
 8
 Puckett argues that the defendants' failure to stop the train before it struck Wanago constitutes negligence. Of course, as a general matter, Illinois law does not require trains to make emergency stops whenever railroad personnel observe an individual near the tracks. Higgins v. Baltimore & O.R.R., 16 Ill.App.2d 227, 231, 147 N.E.2d 714, 716-17 (4th Dist.1958); see Sperry v. Wabash R.R., 55 F.Supp. 825, 826 (E.D.Ill.1944). But Illinois law does require railroad crews to keep a proper lookout for individuals in the vicinity of the tracks, particularly in populated areas and often-travelled crossings. Shine v. Wabash R.R., 8 Ill.App.2d 521, 532, 132 N.E.2d 41, 46 (3d Dist.1956). Had Maves and Gust kept a proper lookout, Puckett contends, they would have seen Wanago near the crossing and stopped the train; their failure to keep a proper lookout, she continues, constitutes negligence. See id., 8 Ill.App.2d at 534, 132 N.E.2d at 47.
 
 
 9
 To support her claim (and, presumably, to demonstrate the existence of a genuine issue of material fact), Puckett argues that the train may have been traveling too fast for the existing weather conditions, making it more difficult for the crew to see Wanago and to stop the train in time. She also intimates that Maves and Gust simply failed to keep a proper lookout of the approaching tracks and crossing. Both these points, however, rely at bottom on the assumption that Wanago was in or adjacent to the crossing--where the locomotive light would have illuminated him--when the train was sufficiently distant from the crossing to be stopped in time.[1] As the district court observed, "[t]here is no basis in the evidentiary record for this assumption, however." Memorandum Opinion and Order at 17, 1989 WL 55365 (May 12, 1989). None of the affidavits or depositions submitted by Puckett suggests that Wanago was near the tracks when the train was at a sufficient distance from the crossing to be stopped in time. And Puckett's reliance upon the allegations contained in her complaint to create genuine issues of material fact is wholly misplaced. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); see Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Getman v. Indiana Harbor Belt R.R., 172 Ill.App.3d 297, 299, 122 Ill.Dec. 298, 300, 526 N.E.2d 557, 559 (1st Dist.1988). As a result, we believe that the district court properly granted the defendants' motion for summary judgment with respect to this part of Puckett's case.
 
 B. Failure to Sound the Whistle or Horn
 
 10
 That the crew may not have seen Wanago in time to stop the train, however, does not necessarily mean that the crew did not see Wanago in time to signal the train's approach.[2] In fact, the record suggests otherwise. When he first saw Wanago in the vicinity of the tracks, Gust said, he did not take any action because Wanago "wasn't bothering anything." Gust Dep. at 70. But as he watched, Gust noticed that Wanago never saw the approaching train; Gust also observed that Wanago wore a cap with ear flaps and thought that "maybe he didn't hear the train."[3] Id. at 125.
 
 
 11
 There is no question that Illinois law requires train personnel to signal a train's approach in certain situations: "It is the general rule of law that a railroad has no duty to keep a lookout for trespassers, but when persons are seen on or near the tracks in a place of danger, there is a duty to give them a signal." Higgins v. Baltimore & O.R.R., 16 Ill.App.2d 227, 230, 147 N.E.2d 714, 716 (4th Dist.1958). In granting the defendants' motion for summary judgment, Puckett contends, the district court failed to consider the defendants' obligation to provide an effective signal that would have alerted Wanago to the approaching train. The defendants counter on appeal that their action--the ringing of the train bell--was sufficient to comply with Illinois law.[4] And they point to one Illinois case stating that train personnel need not activate all the signals on the train to warn approaching pedestrians and motorists. Applegate v. Chicago & N.W. Ry., 334 Ill.App. 141, 148, 78 N.E.2d 793, 796 (2d Dist.1948) (crew may signal with bell or whistle).
 
 
 12
 Read in its entirety, however, Applegate is not entirely favorable to the defendants' position. The plaintiffs in Applegate sued the Chicago & North Western Railway Company (the "CNW") for its failure to give effective warning signals which, they argued, could have prevented the deaths of the passengers in a car struck by the train. In response, the CNW argued that it discharged its statutory duty by ringing the train bell and therefore could not be found liable for negligence. The court disagreed:
 
 
 13
 Irrespective of the statutory requirements, defendant had a common law duty to give timely warning of its approach. Continental Imp. Co. v. Stead, 1887, 95 U.S. 161, 24 L.Ed. 403, 405. Although the bell was rung some 2,000 feet from the crossing, the engineer knew, or should have known, that this sound would be obscured by the noise from the passing freight train, and the whistle which was sounded at 600 feet from the crossing would not be heard until about four seconds before the train crossed the intersection....
 
 
 14
 Under these circumstances, it could reasonably be urged that no effective warning signals were given by defendant's engineer, and whether such conduct constituted negligence was properly an issue for the jury to determine.
 
 
 15
 Applegate, 334 Ill.App. at 149, 78 N.E.2d at 797 (emphasis supplied). As a result, the appellate court upheld the circuit court's refusal to grant a directed verdict or judgment notwithstanding the verdict, concluding that the sufficiency of CNW's warning signal was properly submitted to the jury.
 
 
 16
 In this respect, Puckett's case is similar to Applegate. Gust, the brakeman, observed that Wanago wore a cap with ear flaps and admitted later that "maybe he didn't hear the train." Further, Gust never saw Wanago look at the train or acknowledge its approach. Just as the jury in Applegate apparently concluded that the CNW's bell warning was inadequate because it was obscured by the noise from passing trains, a jury in this case might also consider the Soo Line's bell warning insufficient because Gust--who saw that Wanago's ears were covered and that Wanago did not see the train--did not blast the whistle or horn (both louder than the bell) to alert Wanago of the approaching train.[5]
 
 
 17
 In this regard, Illinois courts generally have examined the sufficiency of railroad warnings on a so-called case-by-case basis, especially when presented with "special circumstances." For example, in Dunn v. Baltimore & Ohio Railroad, 127 Ill.2d 350, 130 Ill.Dec. 409, 537 N.E.2d 738 (1989) (discussing crew's failure to warn of train stopped at crossing), the Illinois Supreme Court explained that the adequacy of warnings is often dependent upon the circumstances of a particular situation:
 
 
 18
 There is no fixed rule as to what constitutes special circumstances. Circumstances which courts have recognized as "special" or "extraordinary" include a blinding snowstorm (Petricek, [v. Elgin, Joliet & Eastern Ry. Co.], 21 Ill.App.2d 60, 157 N.E.2d 421) and malfunctioning warning lights which erroneously indicated that the crossing was clear (Langston, [v. Chicago & N.W.R. Co.], 398 Ill. 248, 75 N.E.2d 363). In contrast, it has been held that darkness, heavy fog and poor visibility do not constitute special circumstances. Bachman v. Illinois Central R.R. Co. (1971), 132 Ill.App.2d 277, 268 N.E.2d 42.
 
 
 19
 Dunn, 127 Ill.2d at 357, 537 N.E.2d at 741. The same case-by-case analysis is appropriate for examining the adequacy of warning devices at crossings. See, e.g., Bassett v. Burlington N.R.R., 131 Ill.App.3d 807, 813, 86 Ill.Dec. 855, 858-59, 476 N.E.2d 31, 34-35 (5th Dist.1985) ("[T]he amount of protection required at a crossing is strictly a jury question to be determined from the circumstances of each case."); see also Baker v. Norfolk & W. Ry., 120 Ill.App.2d 296, 303, 256 N.E.2d 887, 891 (5th Dist.1970) ("Whether a particular crossing is extra hazardous is a jury question."). Cf. Shine v. Wabash R.R., 8 Ill.App.2d 521, 534, 132 N.E.2d 41, 47 (3d Dist.1956) (adequacy of lookout is jury question).
 
 
 20
 These Illinois cases all suggest that railroads must provide an effective signal to warn pedestrians and motorists in the vicinity of approaching trains. The effectiveness of any signal may depend upon the circumstances of the particular case. Here, the district court's grant of summary judgment (without even addressing the signal dispute) deprived Puckett of the opportunity to demonstrate that the ringing bell was inadequate to warn Wanago of the approaching train. In sum, the plaintiff and the defendants' argument regarding the adequacy of the train signal constituted a genuine issue of material fact that should not have been decided as a matter of law.
 
 III.
 
 21
 We do not today decide whether the crew's failure to blast its horn or whistle--upon recognizing that Wanago apparently had not seen or heard the train--constitutes negligence. Nor, given the current posture of this case, would it be appropriate for us to do so. But based upon the cases discussed above and others, it is our view that Illinois law permits a plaintiff to maintain a cause of action due to a railroad crew's failure to give sufficient warning of an approaching train. The sufficiency of the warning given by the defendants in this case is a question of material fact that should not have been dismissed summarily. We therefore reverse and remand the case to the district court for further proceedings not inconsistent with this opinion.[6]
 
 
 
 [1]
 The defendants' expert commented that, given the weather conditions, the crew could not have seen a pedestrian at a distance of over 570 feet, which was the approximate distance required to stop the train
 
 
 [2]
 Indeed, given the defendants' admission at oral argument that Gust did not see Wanago shuffle toward the tracks until it was too late to stop the train, an effective signal may have been the only way for the defendants to avoid the accident
 
 
 [3]
 The defendants argue that this statement is "pure speculation": "If he may not have heard the train the corollary is also true, he may have heard the train." Appellees' Brief at 5. Certainly, whether Wanago in fact heard the bell on the approaching train is highly relevant. Equally relevant in determining degrees of negligence and duties of care, nonetheless, is whether Gust believed Wanago heard the train bell. Since the statement suggests that, at least at some point in time, Gust thought Wanago might not have heard the bell, it is highly probative and cannot be so easily dismissed
 
 
 [4]
 The defendants also hint that Chicago Municipal Code section 188-44 (1984) prohibited them from sounding the train's horn. That section provides, in part, "No person owning or operating a railroad shall cause or allow the whistle of any locomotive engine to be sounded within the city, except necessary brake signals and such as may be absolutely necessary to prevent injury to life and property." Id. (emphasis supplied). Given the circumstances of this case--a pedestrian shuffling toward the path of a speeding train--the defendants certainly were not precluded by the ordinance from blowing the horn
 
 
 [5]
 The defendants correctly posit that they had a right to presume that Wanago would exercise due care as he approached the tracks. Frankenthal v. Grand Trunk W.R.R., 120 Ill.App.3d 409, 415, 76 Ill.Dec. 130, 136, 458 N.E.2d 530, 536 (1st Dist.1983); see Hamilton v. Atchison, Topeka & Santa Fe Ry., 175 Ill.App.3d 758, 760, 125 Ill.Dec. 240, 242, 530 N.E.2d 268, 270 (3d Dist.1988). But the defendants have not argued on appeal that Wanago's contributory negligence bars any potential recovery by Puckett. The issue, therefore, seems to have been waived
 We note for the record, however, that such a defense would not have affected our disposition of this case. At the time of the accident, Illinois courts followed the "pure" comparative negligence rule of Alvis v. Ribar, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981), which the Illinois Supreme Court stated would apply to all cases tried on or after June 8, 1981. Under this rule, Puckett could recover damages even if the jury found Wanago 95% liable and the railroad only 5% liable for the accident (the award, however, would be reduced to 5% of the damages). The Illinois legislature revised this approach by adopting the "modified" comparative negligence rule, which became effective on November 25, 1986. Under this regime, Puckett could recover so long as Wanago's contributory fault did not exceed 50% of the proximate cause of the injury (again, the award would be reduced to a proportional share of the damages). Ill.Ann.Stat. ch. 110, p 2-1116 (Smith-Hurd 1989).
 Since the train collided with Wanago on March 12, 1986, the "pure" comparative negligence approach applies to Puckett's claim. See King v. Petefish, 185 Ill.App.3d 630, 639, 133 Ill.Dec. 636, 641, 541 N.E.2d 847, 852 (4th Dist.1989) ("The modified form of comparative negligence, which denies recovery to a plaintiff who is found to be more than 50% of the proximate cause of the injury, applies only to causes accruing after November 25, 1986."). Thus, Puckett may maintain an action against the Soo Line so long as Wanago's negligence did not constitute 100% of the proximate cause of his death.
 
 
 [6]
 On remand, the district court may again exclude evidence of Wanago's careful performance of his daily activities. Such evidence would be inadmissible under both the Federal Rules of Evidence, see Fed.R.Evid. 406 (habits, not general care, admissible), as well as state evidentiary law. See, e.g., Frankenthal v. Grand Trunk W.R.R., 120 Ill.App.3d 409, 413, 76 Ill.Dec. 130, 134, 458 N.E.2d 530, 534 (1st Dist.1983); Gasiorowski v. Homer, 47 Ill.App.3d 989, 997-98, 7 Ill.Dec. 758, 763-64, 365 N.E.2d 43, 48-49 (1st Dist.1977)