JAE BOON LEE, Adm'x of the Estate of Sang Yeul Lee, Deceased, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (6th Division) No. 1—88—0088

Opinion filed October 5, 1990.—Rehearing denied November 20, 1990.

Wildman, Harrold, Allen & Dixon, of Chicago (Ruth E. VanDemark and Stanley V. Boychuck, of counsel), for appellant.

William J. Harte, Ltd., and Fishman & Fishman & Saltzberg, P.C., both of Chicago (Michael Maloney and Erik Gruber, of counsel), for appellee.

Phelan, Pope & John, Ltd., of Chicago (Peter C. John and Mary Patricia Benz, of counsel), for amicus curiae Commonwealth Edison Co.

George M. Elsener and Todd A. Smith, of Corboy & Demetrio, P.C., of Chicago, for amicus curiae Illinois Trial Lawyer's Association.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Jae Boon Lee, administratrix of the estate of Sang Yeul Lee, brought a wrongful death action to recover damages for the death of her husband which occurred while he was on land owned by defendant, Chicago Transit Authority (CTA). Plaintiff's complaint alleged that the CTA's conduct in maintaining its third rail was either negligent or wilful and wanton, and caused decedent's death. The jury returned a verdict for plaintiff on the negligence count in the amount of $3 million, but reduced its award by 50% based on the decedent's own negligence. In response to a special interrogatory, the jury found that the CTA's conduct was not wilful and wanton. The court entered judgment on the verdict for $1,500,000. The CTA appeals from that judgment, contending that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict; that improper and insufficient evidence and trial error compel a new trial; and that the jury's apportionment of fault and award of damages are not supported by the evidence.

Both the Illinois Trial Lawyer's Association and Commonwealth Edison Company have filed briefs as amicus curiae in this case. The Association urges this court to affirm the trial court's decision, while Commonwealth Edison urges us to reverse the decision.

At trial, the following information was adduced. Plaintiff testified that she and the decedent immigrated to the United States from a rural area outside of Seoul, Korea. They had two sons, Chong Yoon Lee and Jae Lee. At the time of his death, the decedent was employed at Thayer & Chandler, a manufacturer of air brushes. The decedent had a limited understanding of English, but was able to get to and from

work by riding the Ravenswood "L."

On October 21, 1977, the morning preceding the accident, the decedent informed plaintiff that he planned to attend a party in the evening. Decedent apparently left the party after dark. He proceeded up Kedzie Avenue, a north/south street which intersected with the northwest-bound Ravenswood rapid transit line. At this point, he apparently proceeded into the CTA's right-of-way in order to urinate. In the process of doing so, he came into contact with the third rail, and suffered fatal injuries.

The decedent's body was found on the elevated ("L") tracks located on the CTA's Ravenswood line at or near 4700 North Kedzie Avenue. John Costantini, a Chicago Fire Department paramedic field officer, testified that the decedent lay perpendicular to the northwest-bound CTA tracks, his head pointing north. The decedent's feet were near the third rail, pointing in its direction. (The third rail carries 600 volts of electricity and provides power to the train cars as they traverse grade crossings.) The decedent's pants zipper was open, and his penis was exposed. The pathology report listed the immediate cause of death as electrocution. At the time of his death, the decedent had a 0.341 percent blood-alcohol concentration which placed him in the stupor classification of intoxication.

Thomas Wolgemuth, the CTA's director of plant maintenance and later its manager of engineering, testified that the decedent was neither permitted nor invited to be on the Kedzie "L" tracks on October 22, 1977. (Plaintiff introduced no evidence that the presence of decedent inside the Kedzie right-of-way was known to the CTA.) In order to prevent pedestrians from entering the right-of-way at grade crossings such as the one at Kedzie, the CTA developed a "pedestrian access barrier system." This system was in place in July 1976 and consisted of warning signs, right-of-way fencing, access barriers and chain link fences, and trespass barriers, also known as "jaws."

Prior to installing the "jaws" trespass barrier system, the CTA considered three alternative protective systems: gates which would remain closed except when a train was traveling through the crossing, cover boards which would cover the third rail, and catenary lines which would carry the electric current overhead.

Charles Heilman, a safety expert, testified for plaintiff that each of the above systems would have been preferable to the system employed by the CTA. Heilman concluded that the "jaws" were intrinsically unsafe and that the warning signs were insufficient. Heilman gave detailed reasons for his conclusion, but because of our view of the proceedings, it is not necessary to set forth his reasoning.

Plaintiff introduced evidence of 10 prior accidents involving injuries caused by the third rail at CTA grade-level crossings. Of those, one occurred at the Ravenswood crossing at Kedzie in 1974. The 10 accidents spanned the period from 1948 through 1975. None of the accidents occurred after the CTA placed its "jaws" trespass barrier system at grade-level crossings on the Ravenswood line.

Following the presentation of all testimony, the parties tendered instructions to the court. Plaintiff tendered an instruction based on her theory that the CTA was engaged in the activity of conducting electricity. The CTA objected to plaintiff's instruction and tendered its own instruction based on the position that the third rail was a condition, not an activity. The court found that the CTA was engaged in the activity of conducting electricity and gave the jury plaintiff's instruction charging the CTA with the duty of ordinary care. The court refused to give the CTA's instruction.

Following deliberations, the jury returned a verdict in the sum of $3 million which it reduced by 50% to account for the decedent's own negligence. The CTA's motion for directed verdict as well as its motion for judgment notwithstanding the verdict were denied.

The CTA first contends that the trial court erred in denying its motions for a directed verdict on the negligence count and for judgment notwithstanding the verdict. In support of this contention, the CTA argues that railroads owe no duty of ordinary care to trespassers and that only an intentional and affirmative activity by a landowner gives rise to a duty of ordinary care owed to trespassers whose presence can be anticipated.

■ Although plaintiff argues that it was not proved that decedent was a trespasser at the time of his death, we find that the evidence establishes that he was a trespasser. A trespasser is one who enters the premises of another for his own purposes without permission, invitation or other right. (*Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881, 522 N.E.2d 343; *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 343 N.E.2d 261.) At trial, it was established that the decedent entered the CTA's right-of-way in order to urinate. The CTA presented evidence to establish that the decedent was neither invited nor permitted to be on the right-of-way on October 22, 1977. Plaintiff presented no contrary evidence. The question of status may be decided as a matter of law if there are no factual questions present. (*Lorek v. Hollenkamp* (1986), 144 Ill. App. 3d 1100, 495 N.E.2d 679.) In view of the unrebutted testimony presented by the CTA with regard to this issue, we conclude as a matter of law that, at the time of his death, the decedent was a trespasser.

■■■ Generally, a railroad company owes no duty to a trespasser except to refrain from wantonly or wilfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril. (*Rowe v. Taylorville Electric Co.* (1904), 213 Ill. 318, 72 N.E. 711; *Illinois Central R.R. Co. v. Eicher* (1903), 202 Ill. 556, 67 N.E. 376; *Knyal v. Illinois Power Co.* (1988), 169 Ill. App. 3d 440, 523 N.E.2d 639; *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920; *Fosbury v. Aurora, Elgin & Chicago Ry. Co.* (1908), 141 Ill. App. 98.) This limited duty is based on the concept that the law does not require an owner or occupier of land to anticipate the presence of persons wrongfully or unexpectedly on his land. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177.) There are, however, three exceptions to this general rule of limited duty. The first is for young children who the owner knows habitually frequent the vicinity of a defective structure or dangerous agency existing on the land and who by reason of their immaturity cannot appreciate the risk involved. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836.) The second exception applies to trespassers using permissive paths. (*Morgan v. New York Central R.R. Co.* (1927), 327 Ill. 339, 158 N.E. 724.) The third exception is for discovered trespassers. *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 81 N.E.2d 866; *Illinois Central R.R. Co. v. Eicher* (1903), 202 Ill. 556, 67 N.E. 376.

It is obvious that neither the first exception, dealing with small children, nor the third exception, dealing with discovered trespassers, is applicable to the situation before us. At the time of his death, decedent was 46 years old. Thus, the exception for children does not apply. Nor was there any testimony which would permit a finding that the decedent had been discovered by the CTA. Thus, the discovered trespasser exception does not apply.

■■■ Moreover, we find that the permissive use exception and its derivatives are not applicable. Under the permissive use exception, a landowner may owe a duty of care to trespassers, other than to refrain from wilful and wanton conduct, when the landowner permits regular use of his land for travel. (See, *e.g., Morgan v. New York Central R.R. Co.* (1927), 327 Ill. 339, 158 N.E. 724 (when railroad company permitted use of its right-of-way over a period of years, the company had a duty to use reasonable care to discover persons passing along the path in question); *McDaniels v. Terminal R.R. Association* (1939), 302 Ill. App. 332, 23 N.E.2d 785 (when railroad company knew that a pathway over its right-of-way had been used by the gen-

eral public for as many as 20 years, the company owed a duty to watch out for members of the public who might be using the pathway).) Here, the CTA did not acquiesce in the use of its right-of-way as a path. Rather, it posted warnings, erected right-of-way fencing, installed wooden access barriers and chain link fences, and designed and implemented "jaws" to prevent unauthorized persons from entering that right-of-way. Thus, plaintiff may not use the permissive use exception to impose a duty upon the CTA to have discovered the decedent and to have taken reasonable precautions to protect him from harm.

 ■ Having so determined, we nonetheless must inquire further to verify that additional, less clearly defined exceptions to the general rule of limited duty to trespassers do not apply. A review of our jurisprudence in this area reveals that the exceptions to this general rule have evolved over the years to incorporate certain aspects of what formerly was known as the active negligence doctrine. Plaintiff's theory in this regard is set forth in section 334 of the Restatement (Second) of Torts, which provides as follows:

> "A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety." (Restatement (Second) of Torts §334 (1965).)

This Restatement section has been incorporated into an Illinois jury instruction specifically designed to apply in those situations in which an activity on the landowner's premises causes injury to a known or anticipated trespasser. (See Illinois Pattern Jury Instructions, Civil, No. 120.03, Notes on Use (2d ed. 1971) (hereafter IPI Civil 2d) (stating that this instruction instead of IPI Civil 2d No. 120.02 is to be used when the activities of the owner or occupant, *as distinguished from the condition of the premises*, caused the injury).) The trial court here determined that this instruction obtained and, over the CTA's objection, gave it to the jury.

The CTA contends that the trial court erred in instructing the jury on the standard of care owing to a trespasser who is injured by an activity occurring on its premises. As the basis of this contention, the CTA argues that the trial court improperly determined that the decedent's death resulted from an "activity" on the CTA's right-of-way. The CTA maintains that the third rail is a condition, not an activity. The CTA concludes that the trial court's errors in this regard

improperly permitted the imposition of a duty of ordinary care.

During the course of the trial, plaintiff amended her complaint four times. In her fourth amended complaint, plaintiff alleged that the CTA was negligent in that it used and transmitted electricity without proper safety measures. At the conclusion of all evidence, plaintiff moved to file an amendment to that complaint in order to conform it to the evidence as presented. The amendment contained an allegation that the CTA used and transmitted electricity without safety measures. Over objection, the court allowed the amendment, noting that there was evidence that the CTA was placing its electricity in the third rail for various stations throughout the City of Chicago.

Based on the amended complaint, plaintiff tendered an instruction based on IPI Civil 2d No. 120.03, which sets forth the duty owed by an owner to a trespasser for an injury caused by the owner's activities. The CTA offered IPI Civil 2d No. 120.02, which sets forth the duty owed by an owner to a trespasser for an injury caused by a condition of the premises. That instruction provided that the CTA was not under a duty to use ordinary care to see that its premises were reasonably safe for Sang Yeul Lee. The court ruled that the CTA was engaged in the activity of conducting electricity, and, over the CTA's objection, gave the instruction tendered by plaintiff. The court also instructed the jury that the CTA had a duty, "before and at the time of the occurrence, to use ordinary care for the safety of the decedent."

We find that the trial court improperly determined that the CTA's use of a rail charged with electricity was an "activity" giving rise to a basis for instructing the jury on the duty owed to a trespasser caused by the CTA's activities.

■ The Illinois Supreme Court Committee Comments to the instructions distinguish situations in which a condition of the premises gave rise to the injury and those in which the owner or occupant of the premises actively did something which injured the plaintiff. (See generally Illinois Pattern Jury Instructions, Civil, Nos. 120.02, 120.03, Notes on Use (2d ed. 1971).) Moreover, the instructions provide different prerequisites to liability and a different standard of care in each situation. (See Illinois Pattern Jury Instructions, Civil, Nos. 120.02, 120.03 (2d ed. 1971).) Our decisions in this area confirm that this distinction is appropriate. (See, *e.g.*, *Marcovitz v. Hergenrether* (1922), 302 Ill. 162, 134 N.E. 85 (elevator shaft on defendant's premises was a condition on the land); *Votava v. Material Service Corp.* (1979), 74 Ill. App. 3d 208, 392 N.E.2d 768 (submerged barge on defendant's premises was a condition on the land); *Phillips v. J.F. Martin Cartage Co.* (1976), 42 Ill. App. 3d 890, 356 N.E.2d 1237 (refuse container

on defendant's premises was a condition on the land); *Shine v. Wabash R.R. Co.* (1956), 8 Ill. App. 2d 521, 132 N.E.2d 41 (operating train on defendant's premises was an activity on the land); *McDaniels v. Terminal R.R. Association* (1939), 302 Ill. App. 332, 23 N.E.2d 785 (lumber thrown by defendant's employees on its premises was an activity on the land).) Thus, as outlined in the instructions, the situations in which courts have found that an owner's activity gave rise to a duty of reasonable care to trespassers are those in which two factors existed: a positive act of wrongdoing *and* knowledge, constructive or actual, of the trespassers' presence. (See, *e.g., McDaniels v. Terminal R.R. Association* (1939), 302 Ill. App. 332, 23 N.E.2d 785. Compare *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 81 N.E.2d 866 (court refused to impose a standard of ordinary care upon the landowner when a child was struck by a train when the railroad did not know nor should it have anticipated the child's attempt to jump on a moving train).) In contrast, in situations in which courts have found that a condition of the premises caused the plaintiff's injury, no duty of ordinary care existed even when the landowner had knowledge of the likelihood of a trespasser's presence. See, *e.g., Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204; *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360.

Thus, the determination of whether an injury was caused by an activity or a condition is crucial, and we believe that a review of the relevant case law will be instructive. In the Comment to IPI Civil 2d No. 120.03, the authors cite *McDaniels v. Terminal R.R. Association* as an example of a situation in which the plaintiff was injured by an activity, and thus one in which that instruction would have been appropriate. There, the plaintiff, a trespasser on defendant's property, was injured when he was struck by pieces of lumber thrown by defendant's employees. The court found that defendant had constructive knowledge of plaintiff's presence on a path which had been used by the public for as many as 20 years. In view of this knowledge, the court found that defendant had an obligation to keep a lookout for persons on its premises and to conduct its activities in a manner which reasonably would safeguard those persons.

The court reached a similar result in *Shine v. Wabash R.R. Co.*, where a child was struck and injured by defendant's train when the child wandered onto the tracks. The court noted that defendant's employees had actual knowledge of the child's presence and concluded that, in view of this knowledge, the reasonable care standard of ordinary negligence applied.

Finally, in *Votava v. Material Service Corp.*, the court found that a submerged barge which was used for storing the defendant's equipment and supplies was a condition rather than an activity. The plaintiff was injured when his boat ran into the submerged barge. Citing *McDaniels* and *Shine*, the court emphasized that in those situations in which an activity was found, there was a positive act of wrongdoing, rather than a mere condition of the land or property. The *Votava* court concluded that even though the defendant had knowledge of trespassers to the premises, it nonetheless owed such trespassers only a duty to refrain from wilful and wanton misconduct.

■ In light of these decisions, we find that the CTA was not conducting an affirmative activity when the decedent sustained his fatal injuries and that the trial court erred in so concluding. The use of electric energy is not akin to the operation of a train, or to the hurling of lumber, endeavors which have been labelled "activities." (*McDaniels v. Terminal R.R. Association* (1939), 302 Ill. App. 332, 23 N.E.2d 785; *Shine v. Wabash R.R. Co.* (1956), 8 Ill. App. 2d 521, 132 N.E.2d 41.) It is not an affirmative activity, but rather, is a passive, although dangerous, condition comparable to the submerged barge in *Votava v. Material Service Corp.* Compare *Walker v. Texas Electric Service Co.* (Tx. Ct. App. 1973), 499 S.W.2d 20 (labelling electricity transmission wires a condition).

■ ■ Significantly, we hold that, contrary to the trial court's conclusion, the CTA is not in the business of distributing electricity despite the fact that it owns and operates transformers. Rather, the CTA is a consumer of electricity. More specifically, the CTA purchases electricity in order to charge its third rail. This purchase is not unlike a homeowner's purchase of electricity in order to charge an appliance such as an electric outdoor grill. In such an instance the consumer purchases the use of electric energy and ultimately may use that electricity to undertake an activity which may result in injury. (See, *e.g., Prater v. Veach* (1962), 35 Ill. App. 2d 61, 181 N.E.2d 739 (child electrocuted when she came in contact with an air conditioning unit located on a concrete patio behind the defendant's house).) Nonetheless, a landowner does not become a utility simply because it uses or redistributes electricity. Moreover, even a utility has a duty of ordinary care to insulate its power lines only to the extent that those lines are in a place *where persons have a right to be.* (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665; *Rowe v. Taylorville Electric Co.* (1904), 213 Ill. 318, 72 N.E. 711; *Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493, 519 N.E.2d 10; *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903.) That

is, a utility, like any other owner or occupier of land, has a duty of ordinary care when engaged in an affirmative activity and when it knows or should have known of the presence of the trespasser. As the CTA was not engaged in an affirmative activity, we find that the trial court erroneously gave the IPI instruction relating to the duty owed to a trespasser when he is injured by an activity conducted upon the landowner's premises.

In view of our conclusion that the third rail is a condition rather than an activity, we further find that the trial court erroneously denied the CTA's request to instruct the jury that it was not under a duty of ordinary care to a trespasser for conditions on the premises. Illinois Pattern Jury Instructions, Civil, No. 120.02 (2d ed. 1971).

We find that IPI Civil 2d No. 120.02 properly sets forth the law with respect to a condition on the land (see *Hansen v. Goodyear Tire & Rubber Co.* (1990), 194 Ill. App. 3d 351, 551 N.E.2d 253; *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360), and we note that our finding with respect to this instruction applies with equal force when the landowner has notice that persons are likely to come into the area. Our courts have consistently found that insofar as a condition on the land is concerned, a landowner owes only a duty to refrain from wilful and wanton misconduct. For example, in *Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204, the plaintiff was injured when she fell into a hole between the boards of a pier on the defendant's property. The trial court entered summary judgment in favor of the defendant, finding that even though there was evidence the pier had been frequented by trespassers over the past five years, the owner had no duty to keep the premises in any particular state or condition to promote the safety of trespassers. (*Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204.) As noted above, a similar result obtained in *Votava v. Material Service Corp.* See also *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360 (holding that the duty owed to a licensee who sustained injuries when he fell into a sunken driveway while travelling on a permitted path was the same as that owed a trespasser, to refrain from wilful and wanton misconduct).

Significantly, this principle was found to apply in a situation analogous to the case before us. In *Fosbury v. Aurora, Elgin & Chicago Ry. Co.* (1908), 141 Ill. App. 98, the plaintiff was injured on a third rail while trespassing on the defendant's right-of-way. At the time of the injury, the plaintiff was on a path which was used by a considerable number of people. The court nonetheless held that the plaintiff was a trespasser and that the defendant had owed him no duty except

to refrain from wilfully or wantonly injuring him. The *Fosbury* case is indistinguishable from the present case. In both cases, the landowner owed the trespasser no duty except to refrain from wilfully or wantonly injuring him.

We note, however, that the failure of a landowner to disclose certain dangers to trespassers may constitute wilful and wanton misconduct. (*Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204; *Schoen v. Harris* (1969), 108 Ill. App. 2d 186, 246 N.E.2d 849.) As noted earlier, however, the jury here found that the CTA had not engaged in wilful and wanton misconduct.

In sum, we hold that the trial court improperly gave to the jury IPI Civil 2d No. 120.03, outlining the standard of care owed by a landowner to a known or anticipated trespasser when that trespasser is injured by an activity on the land. Thus, the trial court improperly instructed the jury that the CTA owed the decedent a duty of ordinary care. When a case is tried under an incorrect theory of law, the appropriate action is to reverse the judgment and to remand for a new trial. (*Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 322 N.E.2d 5.) The need for a new trial here, however, is obviated because the jury was properly instructed that the CTA could be liable for wilful and wanton conduct and specifically found that the CTA's conduct was not wilful and wanton. Thus, even with proper instructions, the result could not change and there is no need to remand for further proceedings and we therefore reverse the trial court judgment. Accordingly, we need not consider the CTA's remaining contentions regarding various alleged trial errors.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

BILANDIC and RAKOWSKI, JJ., concur.